Clyde J. WHALEN, Jr.,
Plaintiff-Appellant,

v.

ON–DECK, INC., et al.,
Defendants-Appellees.

Supreme Court of Delaware.

Submitted: May 13, 1986.
Decided: Aug. 26, 1986.
Rehearing Denied: Sept. 30, 1986.

Richard K. Herrmann (argued), of Bayard, Handelman & Murdoch, P.A., Wilmington, for plaintiff-appellant.

Alfred M. Isaacs and Richard D. Kirk (argued), of Morris, James, Hitchens & Williams, Wilmington, for General Accident Ins. Co. of America, Inc., garnishee-appellee.

Before CHRISTIE, C.J., McNEILLY and MOORE, JJ.

McNEILLY, Justice.

The issue presented in this case is novel to the Delaware courts.[1] We must decide whether the public policy of this State prevents a liability insurer from being obligated to pay punitive damages assessed against its insured. The Superior Court found that "a rule prohibiting the issuance of insurance covering punitive damages more accurately reflects the public policy of this State." *Whalen v. On-Deck, Inc., et al.*, Del.Super., C.A. No. 80C–JN–112, slip. op. at 7 (O'Hara, J.) (January 10, 1986) (unreported decision). [Available on WESTLAW, DE database.] We disagree and therefore reverse the lower court's decision.

On May 20, 1980, the plaintiff was injured when a weighted ring, intended for use on a baseball bat by a player taking practice swings, came off a relatively narrower softball bat and struck plaintiff in the face. Plaintiff brought a personal injury action against several defendants not parties to this appeal. On-Deck, Inc. ("On-Deck"), the company that designed and manufactured the ring, was named as a third-party defendant and later as an additional defendant. On-Deck was insured by General Accident Insurance Company of America, Inc. ("General Accident"). Plaintiff alleged that On-Deck was aware of a risk to consumers who used the baseball bat ring on softball bats, but failed to warn consumers of the risk.

Trial in the action was bifurcated into a trial on liability and compensatory damages and a trial on punitive damages. On November 15, 1983, a jury awarded plaintiff $154,345.20 in compensatory damages. General Accident subsequently paid the compensatory damage award to plaintiff.

On November 29, 1983, On-Deck, through counsel retained by General Acci-

---

1. The United States District Court for the District of Delaware, however, recently addressed the issue in *Valley Forge Insurance Company v.*

*Jefferson,* D.Del., 628 F.Supp. 502 (1986). That case is discussed later in this opinion.

dent, moved for summary judgment on the punitive damages issue. While that motion was pending, General Accident moved to withdraw its counsel for On-Deck, arguing that the insurance policy did not cover punitive damages. The Superior Court granted the motion to withdraw counsel, subject to the completion of the outstanding motion for summary judgment. The Court denied On-Deck's motion for summary judgment on July 10, 1984, stating that if an award of punitive damages was later deemed proper, it could be based only on a determination that On-Deck's conduct was wanton, as there existed no evidence of intentional or willful conduct by On-Deck.

A jury awarded plaintiff $60,000 in punitive damages against On-Deck on August 27, 1984. Plaintiff then filed a writ of attachment against General Accident in order to garnish the alleged debt owing from General Accident to On-Deck pursuant to its liability policy. General Accident moved to quash the writ, and plaintiff moved for summary judgment on its entitlement to garnishment.

In its opinion dated January 10, 1986, the Superior Court granted General Accident's motion to quash and denied plaintiff's motion for summary judgment. The Court based its decision on the purposes underlying punitive damages, i.e., to punish the wrongdoer and deter him and others from similar conduct. These purposes, reasoned the Court, "would be frustrated if one who has acted wantonly were permitted to shift the burden to its insurer, and ultimately to the public." *Whalen,* slip. op. at 7.[2]

The plaintiff argues on appeal that there is no public policy in Delaware against insurance covering punitive damages for wanton conduct. In support of his position, the plaintiff cites cases that have upheld insurance for punitive damages on grounds of maintaining the freedom to contract and leaving public policy issues to the legislature.[3] General Accident, in arguing that punitive damages are clearly uninsurable, cites no Delaware cases directly on point. Instead, it mentions cases that discuss the purposes of punitive damages in Delaware, and from there it extrapolates a public policy against insuring punitive damages, reasoning that such insurance would frustrate those purposes.

Both parties to this appeal discuss in their briefs this Court's decision in *Reynolds v. Willis,* Del.Supr., 209 A.2d 760 (1965), in which this Court discussed in dicta the issue presently before us. *Reynolds* was a wrongful death and survival action brought by the widow of a decedent who had died as a result of injuries received in an automobile accident. This Court permitted the plaintiff to recover punitive damages in her survival action, based upon a finding of wanton conduct by the defendant. In allowing the recovery of punitive damages, this court rejected the defendant's argument that such recovery should be denied because "in most automobile accident cases, punitive damages would punish the insurer rather than the defendant":

> We realize the truth of that suggestion.... If these results are deemed undesirable as a matter of public policy, the Legislature is the proper forum in which to seek a change; as a Court, we cannot create distinctions based upon the existence of insurance.

*Id.* at 763.

The Superior Court found *Reynolds* to be inapposite to the case at bar. The United

---

**2.** Having based its decision solely on public policy grounds, the Court did not address whether On-Deck's policy included coverage for punitive damages.

**3.** According to the plaintiff, 25 jurisdictions have found no public policy bar to insurance coverage for punitive damages. *See, e.g., Lazen-* *by v. Universal Underwriters Insurance Co.,* Tenn.Supr., 214 Tenn. 639, 383 S.W.2d 1 (1964). Thirteen states, however, have found that public policy prohibits such coverage. *See, e.g., Northwestern National Casualty Co. v. McNulty,* 5th Cir., 307 F.2d 432 (1962).

States District Court for the District of Delaware, however, found *Reynolds* to be instructive in *Valley Forge Insurance Company v. Jefferson*, D.Del., 528 F.Supp. 502 (1986).[4] In concluding that "public policy does not prohibit a liability insurer from paying punitive damages assessed against its insured," the District Court stated:

> The importance of the *Reynolds v. Willis* opinion is the philosophical inclination of the Delaware Supreme Court to abjure reliance on "public policy" in order to prohibit an insurer from paying an award of punitive damages for wanton conduct of its insured.

*Id.* at 508 (footnote omitted). In its subsequent decision denying the defendants' motion for reargument, the District Court reiterated its prediction that this Court "would defer to the wisdom of the legislature on this particular question, as it has on several other controversial issues of public policy." *Id.* at 511.

We realize, of course, that this Court's dicta in *Reynolds* and the District Court's prediction in *Valley Forge* of how this Court would rule are not controlling. These decisions, however, along with the Superior Court's decision in this case, are the only decisions in this State speaking to the public policy of Delaware with regard to insuring against punitive damages, and are looked to for background only.

The Superior Court found that the public policy of Delaware prohibits the issuance of insurance covering punitive damages. In this Court's view, however, there is no evidence of public policy in this State against such insurance. The Delaware Legislature has formulated no such policy, and this Court has indicated in the past that it would defer to the Legislature on the issue. *See Reynolds*, 209 A.2d at 763. While the Superior Court and General Accident believe the purposes of punitive damages would be frustrated if such damages were insurable, we cannot infer from that concern a policy against such insurance. A wrongdoer who is insured against punitive damages may still be punished through higher insurance premiums or the loss of insurance altogether. More importantly, in light of the importance of the right of parties to contract as they wish, we will not partially void what might otherwise be a valid insurance contract as contrary to public policy in the absence of clear indicia that such a policy actually exists.

In conclusion, public policy in this State does not prohibit the issuance of an insurance contract that covers punitive damages. Having so ruled, we now remand this case to the Superior Court to determine whether On-Deck's insurance policy with General Accident insured against punitive damage awards.

\* \* \*

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

4. Before the District Court was a diversity case in which the Court was called upon to apply Delaware law. Because this Court had not spoken on the issue directly, the District Court was called upon to predict how this Court would rule. The Court looked to *Reynolds* for guidance.