**TRANSAMERICA CORPORATION, a corporation of the State of Delaware and TIG Insurance Company, a corporation of the State of California, Plaintiffs,**

v.

**RELIANCE INSURANCE COMPANY OF ILLINOIS and Certain Underwriters at Lloyds, London and Certain Insurance Companies in the London Market, Defendants.**

Civ. A. No. 94–645–SLR.

United States District Court,
D. Delaware.

May 15, 1995.

Richard E. Poole, Peter J. Walsh, Jr., and Patricia A. Sabol, Potter Anderson & Corroon, Wilmington, DE, for plaintiffs.

Robert K. Beste, Jr., and David L. Finger, Biggs & Battaglia, Wilmington, DE (Wilson M. Brown, III, Robert A. Kosik, Susan M. Kennedy, Drinker Biddle & Reath, Philadelphia, PA, of counsel), for defendant Reliance Ins. Co. of Ill.

Allen M. Terrell, Jr., and Frederick L. Cotrell, III, Richards, Layton & Finger, Wilmington, DE (Edward T. Stork, Sedgwick Detert Moran & Arnold, Los Angeles, CA, of counsel), CA for defendants Certain Underwriters at Lloyds, London and Certain Ins. Co. in the London Market.

## OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

Plaintiff, Transamerica Corporation ("Transamerica"), incorporated in Delaware, provides financial services throughout the United States and is based in San Francisco, California. (D.I. 16 at 5) Until April of 1993, Transamerica had an ownership interest in TIG Insurance Company ("TIG")[1], a California corporation with its main administrative offices in Texas. (Id. at 5; 9 at 4–5; 17 at ¶ 4; 57 at 2) Defendant Reliance Insurance Company of Illinois ("Reliance") is an Illinois company with its corporate headquarters in New York, New York. (D.I. 9 at 5; D.I. 62) The remaining defendants (the "London defendants") are alleged to be underwriters and insurance companies existing under foreign laws with their principle places of business in England. (D.I. 1 at ¶ 4; 53 at ¶ 4) Presently before the court is defendants' motion to dismiss plaintiff's complaint or, in the alternative, to stay said litigation (D.I. 8); plaintiffs' motion to remand this case to Delaware Superior Court (D.I. 23); and defendants' motion to strike plaintiffs' second amended complaint (D.I. 56).

---

1. The Transamerica Insurance Company was the predecessor of TIG. For the sake of clarity, the court shall refer to this entity uniformly as "TIG." (D.I. 16 at 13)

## II. BACKGROUND

The litigation pending before this court has a lengthy procedural history concerning at least three separate lawsuits. The underlying issues in said lawsuits flow from an insurance relationship between TIG and Reliance.

### A. Insurance Policy Between TIG and Reliance

In 1988, Transamerica embarked on an effort to purchase comprehensive professional liability insurance coverage for itself and its subsidiaries, of which TIG is one. In connection with this effort, representatives from Transamerica and Reliance met and negotiated a policy for the period 1988–1989. (D.I. 16 at 8) Transamerica claims, and defendants do not dispute, that a priority for Transamerica in this negotiating process was to obtain "insurance coverage for punitive damage awards to the broadest extent possible. . . ." (*Id.* at 8–9) Because several states do not allow insurance coverage for punitive damages, but the Delaware Supreme Court in *Whalen v. On–Deck, Inc.*, 514 A.2d 1072 (Del.1986) held that such coverage does not violate Delaware's public policy, the following language was included in the 1988–89 and 1989–1990 policy agreements between the parties: "For the purposes of this policy, any insurance coverage dispute concerning punitive damages will be litigated in the State Court of Delaware." (D.I. 18 at ¶ 10)

In the 1990–91 policy the aforementioned language was eliminated, in order to ensure the applicability of *Whalen* and, under the heading "Ultimate Net Loss," the parties included the following: "As regards punitive damages this policy shall be construed pursuant to the laws of the State of Delaware." (*Id.*) Therefore, the Delaware choice of forum clause was replaced with the Delaware choice of law clause. TIG is insured under the policies sold by Reliance to Transamerica for the periods of August 1, 1990—August 4, 1991 and August 4, 1991—September 4, 1992. (D.I. 17; 18 at ¶ 12)

Plaintiffs purchased excess coverage from the London defendants from 1990–1992. (D.I. 16 at 11) These policies (Policy Nos. 551/UDEK257 and 551/U1EO285) had limits of $10,000,000 and $15,000,000 respectively and indicate that they "follow form" to the Reliance policies. (D.I. 60 at 4; 18 at ¶ 14) Approximately three hundred members of the syndicates which own a percentage of the British insurance policies at issue are citizens of either California, Delaware, or Texas. (D.I. 57 at Ex. C)

### B. Underlying California Litigation

On March 14, 1991 Cates Construction, Inc., a contractor for a California condominium project, filed suit against the developer of said project, Talbot Partners ("Talbot"). *Cates Construction, Inc. v. Talbot Partners,* No. BC 023655 (Cal.Super.Ct., Los Angeles County 1994). TIG, as surety, had issued a performance bond and a labor and material payment bond to Talbot naming Cates as principal. (D.I. 16 at 12) Talbot filed a cross complaint against TIG alleging, *inter alia,* that it had failed to properly honor performance and labor and material payment bonds. (*Id.* at 13;) In January of 1993 the court in this action found that TIG had breached the bonds it issued and the court awarded Talbot approximately $4 million. (D.I. 9, Item 2 at Ex. E) A jury then awarded punitive damages of $28 million. (*Id.*) TIG is appealing this award and has not sought any insurance claim against Reliance. (*Id.,* Item 2)

### C. California Declaratory Judgment Action

On July 15, 1994, Reliance filed suit in the same California court to determine if it was legally obligated to indemnify TIG or Talbot. *Reliance Ins. Co. v. TIG Ins. Co., et al.,* No. BC 108855 (Cal.Super.Ct. Los Angeles Cty. 1994). Reliance has since dismissed Talbot as a party in this California litigation without prejudice. (D.I. 61 at ¶ 2) Discovery appears to be advancing in this litigation, and the case is scheduled "on track" to be resolved within a year of filing. (D.I. 50 at 19). On April 28, 1995 Reliance filed a motion for summary judgment and said motion is scheduled for argument on May 26, 1995. (D.I. 61 at ¶ 1)

## D. Delaware State Court Action

On October 25, 1994 [2] plaintiffs filed this suit in Superior Court of the State of Delaware. In this original complaint, the London defendants were labelled "Certain Underwriters at Lloyd's [3], London and Certain Insurance Companies in the London Market." (D.I. 1) These defendants were further described as "unincorporated underwriters and limited liability companies organized and existing under foreign laws, with their principal place of business in London, England." (D.I. 1 at ¶ 4) Reliance, joined by the London defendants, removed said action pursuant to 28 U.S.C. § 1441(a) to the Federal District Court for the District of Delaware on November 28, 1994, asserting as the grounds for federal jurisdiction diversity of citizenship, pursuant to 28 U.S.C. § 1332. (D.I. 1; 2) Count I of said plaintiffs' complaint seeks declaratory relief that defendants must indemnify TIG for punitive damages in both the underlying California verdict and other final punitive damages. Count II alleges breach of contract and Count III alleges Reliance used bad faith conduct in refusing to honor the parties' contract. (D.I. 1 at ¶¶ 25, 30–34, 40)

On February 24, 1995, plaintiffs filed their first amended complaint. (D.I. 53) Plaintiffs amended Paragraph Four of said complaint so as to define the aforementioned defendants as the following:

> Defendants Certain Underwriters at Lloyd's, London and Certain Insurance Companies in the London Market, more particularly set forth in Exhibit A attached hereto and made part hereof ("London"), are all the subscribers to Policy Nos. 551/UDEK257 and 551/U1EO285, consisting of unincorporated underwriters, syndicates

and members, at least some of whom are citizens subject to foreign laws, and limited liability companies organized and existing under foreign laws, with their principal places of business in England.

(D.I. 53 at ¶ 4) Plaintiffs also attached to said complaint an exhibit listing the names of specific syndicates alleged to have subscribed to the relevant insurance policies, their respective numbers, and the names of similarly situated insurance companies. (*Id.* at Ex. A) Plaintiffs argue that this amendment was the result of defendants finally responding to discovery requests and revealing the identities of the syndicates which own an interest in the relevant policies.[4]

## III. DISCUSSION

### A. Plaintiffs' Motion to Remand

Subsequent to defendants filing their motion to dismiss, plaintiffs filed a motion to remand this action to the Delaware Superior Court, raising the issue of whether complete diversity exists between the parties. (D.I. 24 at 2) Specifically, plaintiffs argue that 1) defendants did not meet their burden to demonstrate diversity of citizenship on their notice of removal and 2) complete diversity does not exist between plaintiffs and all defendants because of the presence of three hundred underwriters who are citizens of either Delaware, Texas or California. (D.I. 60 at 11)

 Upon removal from the Delaware Superior Court, defendants asserted that this court had jurisdiction over said action "pursuant to 28 U.S.C. § 1332, since there is complete diversity between the plaintiffs and the defendants and the amount in controver-

---

**2.** Although three months after the filing of the California case, the court notes that TIG was not served with the California complaint until August 25, 1994 and the first amended complaint was not filed until September 1, 1994. (D.I. 16 at 14)

**3.** The record is inconsistent as to the proper designation of this defendant as "Lloyds" or "Lloyd's." The court will uniformly refer to this party as the latter. *See Daly v. Lime Street Underwriting Agencies Ltd.*, 2 F.T.L.R. (Q.B.1987).

**4.** Specifically, plaintiffs note that on December 29, 1994 Keith William Kerr responded to inter-

rogatory questions of plaintiffs on behalf of himself and certain underwriting members and insurance companies, indicating the numbers of the syndicates and companies which underwrote the policies at issue. (D.I. 60 at Ex. C) When asked in supplemental interrogatories whether any of the syndicate members were citizens of California, Delaware or Texas, defendants initially declined to answer. However, after being ordered by the court to do so, defendants informed plaintiffs that three hundred members of one or more of the syndicates listed were citizens of Delaware, California, or Texas. (D.I. 51; 55)

sy exceeds the sum of $50,000, exclusive of interest and costs." (D.I. 1 at 1) Section 1332 confers original subject matter jurisdiction to federal courts when the matter in controversy exceeds $50,000 and when the civil suit is between, *inter alia:*

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which the citizens or subjects of a foreign state are additional parties. . . .

28 U.S.C. § 1332(a). It is axiomatic that there must be complete diversity of citizenship between plaintiffs and all defendants. *Trivett v. Bank of Delaware,* 421 F.Supp 827 (D.Del.1976). Thus, if any one defendant is a citizen of the same state as any one plaintiff, diversity of citizenship is destroyed and § 1332 provides no basis for federal court jurisdiction. A corporation has citizenship in the state of its incorporation and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). However, an unincorporated association has no separate legal identity and its citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members. *Carden v. Arkoma Assoc.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990).

■ As noted, plaintiffs allege that complete diversity has not been established as to those defendants identified in the complaint as Certain Underwriters of Lloyd's, London ("Lloyd's defendants"). As a threshold matter, a brief discussion of the structure of Lloyd's is necessary for a complete understanding of the diversity issue. "Lloyd's of London" is not an insurance company but rather it is a marketplace where insurance investors buy and sell insurance risks. *Bath Iron Works Corp. v. Certain Member Cos. of the Inst. of London Underwriters,* 870 F.Supp 3, 4 (D.Me.1994). These individual investors are known as "underwriters" or "Names" and do not operate individually, but as members of "syndicates." It is these syndicates, which are simply groups of Names,

which underwrite coverage for an insured. *Id.* These syndicates may have a few hundred or many thousand investors. *Certain Underwriters at Lloyd's London, England v. Layne,* 26 F.3d 39, 42 (6th Cir.1994). The Names do not actively participate in the insurance business. Rather, they delegate essentially full authority to the "active underwriter" in the syndicate to perform all management and day-to-day underwriting functions, as well as the authority to bring or deny lawsuits. *Id.; Bath Iron Works,* 870 F.Supp. at 4. Names are entitled to a share of profits from a syndicate's business. Names, however, have unlimited personal liability, although only for their share of the syndicate's losses. *Layne,* 26 F.3d at 42; *International Ins. Co. v. Certain Underwriters at Lloyd's London,* No. 88C9838, 1991 U.S.Dist. LEXIS 12937 (N.D.Ill September 12, 1991) (magistrate opinion). Often, a certain insurance risk will be underwritten by several, sometimes hundreds, of different syndicates, each who accept a percentage of the risk. *Id.* Under British law, the syndicates themselves are not legally recognized as persons having their own citizenship. *Bath Iron Works,* 870 F.Supp. at 4.

■ The issue before the court, therefore, is how to characterize the citizenship of the syndicates for the purposes of establishing diversity jurisdiction, i.e., whether citizenship is determined by the citizenship of all the syndicate members, or simply the active underwriters.

Defendants urge this court to adopt the holding of the United States Court of Appeals for the Sixth Circuit in *Certain Underwriters at Lloyd's London, England v. Layne,* 26 F.3d 39 (6th Cir.1994). In *Layne,* the Lloyd's underwriters, as plaintiffs, sued defendants, seeking a declaratory judgment denying coverage. Defendants, on their part, filed a counterclaim against the active underwriters, alleging that the active underwriters withheld insurance proceeds in bad faith. After examining Fed.R.Civ.P. 17(a)[5]

---

5. Rule 17(a) provides, in relevant part, as follows:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another . . . may sue in that person's own name without joining the party for whose benefit the action in brought. . . .

and having determined, based upon the common law as embraced by Tennessee, that a party who deals with an agent for an undisclosed principal may sue either the principal or the agent, but not both, specifically concluded as follows:

> When the defendants elected to sue the underwriters [meaning the active underwriters], they elected to sue the agent. The syndicates, as principal, therefore, were no longer liable to the defendants on the contract and, consequently, are not real parties in interest. Although initially there might have been a question whether the defendants elected to sue the agents since the suit originated as a declaratory judgment action brought by the underwriters, the defendants' counterclaim against "Certain Interested Underwriters at Lloyd's, London, England" seems to be a clear election to sue the agent. Since the underwriters are British citizens and the defendants are citizens of Tennessee, the parties are completely diverse and jurisdiction under 28 U.S.C. § 1332(a)(2) was properly invoked.

*Id.* at 43. The court in *Layne* did not dispute the fact that in some circumstances the "undisclosed" principals (as opposed to their "agents") may be the "real parties in interest" whose citizenship is relevant to the question of diversity jurisdiction. Rather, the court simply found no basis for concluding in that case that the defendants wanted to sue the principals instead of the agents.

This court has no quarrel, then, with the *Layne* "agency" analysis as applied under the facts there pending, i.e., since the active underwriters are the only members of a syndicate with the authorization to file lawsuits, it stands to reason that they should be considered the "real party in interest" and not just a "nominal or formal" party for prosecution purposes under Fed.R.Civ.P. 17(a).[6] As noted by the Supreme Court in *Navarro Sav. Ass'n v. Lee*, however, while there is a "rough symmetry" between the "real party in interest" standard of Fed.R.Civ.P. 17(a) and the rule that diversity jurisdiction depends on the citizenship of the "real party in interest," the two rules do not always produce the same result. 446 U.S. 458, 462–63 n. 9, 100 S.Ct. 1779, 1782–83 n. 9, 64 L.Ed.2d 425 (1980) (for example, a labor union is the "real party in interest," but its citizenship is that of all its members). Therefore, "[i]f … [a] nondiverse party is a real party in interest, it is immaterial that his joinder was motivated by a desire to defeat jurisdiction." *Layne*, 26 F.3d at 42.

The question remains whether the active underwriters or the Names are the "real parties in interest" in the litigation *sub judice*. Other district courts have analyzed the same question under similar facts and determined that the relevant citizenship is that of all the syndicate members. *Queen Victoria Corp. v. Insurance Specialists of Hawaii, Inc.*, 711 F.Supp 553 (D.Hi.1989); *Bath Iron Works*, 870 F.Supp 3; *International Ins. Co.*, 1991 U.S.Dist. LEXIS 12937. The *Queen Victoria* court held that because "Lloyd's is an unincorporated group of underwriters, its citizenship is determined by the citizenship of its members." 711 F.Supp at 554.

A more thorough analysis, and that which this court embraces, is offered by the *Bath Iron Works* court. In *Bath Iron Works*, plaintiff BIW sued certain underwriters of Lloyd's of London in Maine Superior Court. The Lloyd's defendants removed the action to federal court and BIW moved to remand because of a lack of subject matter jurisdiction. 870 F.Supp. at 4. The District of Maine rejected defendants' argument, which defendants also offer in the case at bar while citing to *Navarro*, 446 U.S. at 465, 100 S.Ct. at 1784, that the only "real parties in interest" are the active underwriters. In doing so the court noted the following:

> In … *Navarro*, … the court[ ] analyzed whether the named plaintiffs were also real-parties-in-interest and, therefore, the appropriate parties to consider to determine jurisdiction. Here, the proper focus of the Court is upon defendants, not plaintiffs, and it appears that **both active and nonactive Names face potentially unlim-**

---

6. Unlike defendants/counter-claimants in *Layne*, of course, plaintiffs at bar apparently intend by their suit to impose liability on the Names (the "undisclosed principals"), not just the active underwriters (the "agents"). (D.I. 53 at ¶ 4, Ex. A)

ited **liability under their agreements with Lloyd's syndicate and insureds.** In fact, it is the Names' investments and personal assets that may ultimately fund any settlement or judgment against Lloyd's.... Accordingly, it would be absurd to conclude that the Names are merely "nominal or formal parties" in this litigation.

*Id.* at 6 (emphasis added). The District of Maine further asserted, as this court does today, that the distinction between the active underwriters and the Names in *Layne* was "unnecessarily artificial." *Id.* at 7.

To resolve the issue on appeal, the Sixth Circuit panel used an agency analysis and concluded that the "underwriters" (referring to active underwriters only) function as agents for an undisclosed principal, the syndicate. [*Layne*, 26 F.3d] at 43. The court, however, failed to note that "syndicates" are not recognized as legal entities under British law. The syndicates are simply groups of several Names, one of whom performs duties on his or her behalf as well as the behalf of others. Accordingly, the principals are the Names, not the syndicates.

*Id.* Finally, the *Bath Iron Works* court rejected *Layne's* analogy to the trustee/beneficiary relationship because, unlike beneficiaries, the Names in a syndicate face unlimited liability for their portion of the syndicate. *Id.*

This court finds the analysis offered by the District of Maine compelling. While it may seem counter-intuitive at first blush to deny a foreign entity access to federal court, this concern dissipates when one realizes that the nation of its origin, in this case Great Britain, has created no legal fiction which confers upon such syndicates a legal identity separate from that of its individual members, such as a corporate identity. Moreover, the analysis offered by defendants is contrary to the holding of the United States Supreme Court in *Carden* where the Court

reject[ed] the contention that to determine, for diversity of citizenship purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of "all the members...."

494 U.S. at 195, 110 S.Ct. at 1021 (courts must look to the citizenship of limited as well as general partners to determine if there is complete diversity); *see also International Insurance,* 1991 U.S.Dist. LEXIS 12937 at *12 ("The Supreme Court in *Carden* rejected a 'real party in interest' analysis in determining the citizenship of an artificial entity."). This court sees no reason to deviate from the above analysis.

**B. Motion to Strike First Amended Complaint**

■ On February 24, 1995 plaintiffs filed their amended complaint. (D.I. 53) Commensurate with Fed.R.Civ.P. 15(a), court approval of this amendment is not required. Defendants move to strike this First Amended Complaint because 1) it is unnecessary; and 2) it is an improper attempt to defeat diversity, precluded by 28 U.S.C. § 1447(e). Plaintiffs dispute this accusation, arguing that they amended their complaint in response to discovery responses by defendants. Specifically, they assert that they requested the names and numbers of the syndicates with an interest in the policies at issue. Upon receipt of the requested information, plaintiffs further requested the citizenship of the Names. It was not until the court ordered a response that defendants shared the information that nearly three hundred Names are citizens of Delaware, California, and Texas. This obviously compelled plaintiffs to amend their complaint to more precisely state the appropriate defendants.

Rule 12(f) permits a court to eliminate "redundant, immaterial, impertinent, or scandalous matter" from a complaint. Fed. R.Civ.P. 12(f). Defendants have not demonstrated that this information falls within any of these categories, nor did they demonstrate that plaintiffs are attempting to circumvent this court's jurisdiction. The explanation offered by plaintiffs as to why they have amended their complaint is more compelling to the court than defendants' unsupported

allegations. Therefore, the amendment stands.[7]

## IV. CONCLUSION

Defendants' motion to strike plaintiffs' First Amended Complaint is denied. Plaintiffs' motion to remand this case to the state court for lack of subject matter jurisdiction is granted. The remaining pending motions are, therefore, moot. An order consistent with this opinion shall issue forthwith.

---

7. Because the amended complaint explicitly indicates that the plaintiffs intend to sue all syndicates and their members, defendants' arguments that plaintiff has originally sued only the diverse underwriters is misplaced.