**CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S, LONDON, ENGLAND, Plaintiffs–Appellees,**

v.

**James E. LAYNE; Cindy Carol Kilgore, Defendants–Appellants,**

**Larry Nig Kilgore, Defendant.**

**No. 92–6079.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 23, 1993.

Decided June 9, 1994.

---

Nora A. McCarthy, Samuel L. Akers (briefed), R.R. Ruth, Jr., Shane Usary (argued), Luther, Anderson, Cleary, Ruth & Speed, Chattanooga, TN, for plaintiffs-appellees.

Phillip C. Lawrence, Poole, Lawrence, Thornbury, Stanley & Morgan, Andy D. Lewis (argued), Garner, Lewis & Prickett, Chattanooga, TN, L. Thomas Austin (briefed), Dunlap, TN, for defendants-appellants.

Before: KENNEDY and RYAN, Circuit Judges; and BROWN, Senior Circuit Judge.

RYAN, Circuit Judge.

The defendants James E. Layne and Cindy Carol Kilgore appeal a verdict for the plaintiffs, Certain Interested Underwriters at Lloyd's of London, England, in a diversity action for a declaratory judgment seeking to

deny coverage under an insurance policy. We must decide whether the district court properly exercised jurisdiction over this case. We conclude that the underwriters are the real parties in interest and that their British citizenship established the requisite diversity. Therefore, we affirm.

## I.

In June 1990, Layne bought a fire insurance policy from Certain Interested Underwriters at Lloyd's of London, covering his tavern in Marion County, Tennessee. The policy named Cindy Carol Kilgore as the mortgagee and loss payee. Two months later, the tavern burned down in a fire of suspicious origin. The underwriters brought suit in federal court seeking a declaratory judgment denying coverage because the defendants, they allege, conspired to burn down the tavern. The plaintiffs alleged diversity jurisdiction under 28 U.S.C. § 1332(a)(2). The defendants are citizens of Tennessee; the plaintiff-underwriters are citizens of Great Britain. The defendants filed a counterclaim against the underwriters alleging that they withheld insurance proceeds in bad faith. The defendants later moved to dismiss the case for lack of subject matter jurisdiction. The district court denied the motion and after a trial, the jury returned a verdict for the plaintiffs. The defendants then moved to vacate the judgment for lack of jurisdiction, and the district court once again denied their motion. The defendants now appeal arguing that the underwriters are agents or representatives of unincorporated associations called syndicates which conduct business at Lloyd's; that a Lloyd's syndicate, as an unincorporated association, has the citizenship of all of its members; and that if any syndicate members are citizens of Tennessee, there is not the requisite diversity to confer jurisdiction on the federal court.

## II.

■ In reviewing the district court's determination concerning its jurisdiction, we review the court's findings of fact for clear error and conclusions of law de novo. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 326 (6th Cir.1990). Subject matter jurisdiction in this action was based on diversity of citizenship under 28 U.S.C. § 1332(a)(2), which vests the federal district courts with jurisdiction in cases of sufficient value between "citizens of a State and citizens or subjects of a foreign state." *Id.* We equate the citizenship of a natural person with his domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir.1990).

■ A corporation has citizenship in its state of incorporation and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). However, an unincorporated association, such as a labor union or a partnership, has no separate legal identity so its citizenship, at least for the purposes of diversity jurisdiction, is the citizenship of each of its members. *See, e.g., Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *United Steelworkers of Am. v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney*, 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889). Finally, a plaintiff seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction. *See* Fed.R.Civ.P. 8(a); *Ohio Nat'l Life*, 922 F.2d at 321; *Kaiser v. Loomis*, 391 F.2d 1007, 1010 (6th Cir.1968).

The rules for diversity jurisdiction are straightforward. The difficulty arises in applying them to Lloyd's of London—that venerable institution shrouded in the corporate vagaries of British law. The corporation Lloyd's of London is not actually in the insurance business. Rather, the corporation provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Clifford Chance, *Doing Business in the United Kingdom* §§ 46.02, 46–6 to 46–8 (Barbara Ford, A.D.M. Forte, & Herbert Wallace eds., 1990); Eileen M. Dacey, *The Structures of the Lloyd's Market, in Lloyd's, the ILU, and the London Insurance Market 1990*, at 33, 49–50 (PLI Commercial Law and Practice Course Handbook Series No. 555, 1990). The Lloyd's corporation is not involved in this action.

The business of insuring risk at Lloyd's is carried on by a group of more than four

hundred syndicates. These syndicates are not incorporated, and they are comprised of some 30,000 member-investors, sometimes called "underwriters" or "names," who hope to share in any profit the syndicate might make. *Daly v. Lime Street Underwriting Agencies Ltd.,* 2 FTLR 277, 279 (Q.B.1987). A particular syndicate may have a few hundred or many thousand investors. These investors, however, do not actively participate in the insurance business. In this regard, a Lloyd's syndicate is analogous to a limited partnership; however, unlike limited partners, syndicate members have unlimited partnership liability for their share of the syndicate's losses. *Id.*

Each syndicate is managed on a day-to-day basis by an underwriter appointed or nominated by the syndicate. These underwriters, sometimes called agent-underwriters or active-underwriters, buy and sell insurance risks and if successful make a profit for their syndicate. Dacey, *supra,* at 48–49. The underwriter has the authority to bind the syndicate members in these transactions. Also, the underwriter has the authority to bring a lawsuit on behalf of the syndicate members. *Id.*

An insurance policy is obtained by contacting an insurance broker, known as a Lloyd's broker, who insures part of the risk with an underwriter representing a syndicate, known as the lead syndicate. Daniel M. Bianca, *The Workings of the London Market, in Lloyd's, the ILU, and the London Insurance Market 1990,* at 57, 61–71 (PLI Commercial Law and Practice Course Handbook Series No. 555, 1990). The broker then insures the rest of the risk through agreements with other underwriters representing other syndicates. *Id.* Consequently, any single risk is insured by more than one syndicate. By the terms of a Lloyd's policy, each of the member-investors in the subscribing syndicates binds himself for his individual portion of the risk.

In a nutshell, Lloyd's consists of unincorporated groups of investors, called syndicates, who appoint agents, called underwriters, to act on their behalf. But for purposes of establishing diversity jurisdiction, whose citizenship counts: the agent-underwriters' or the syndicate members'?

■ When the question is which of various parties before the court should be considered for determining whether there is complete diversity of citizenship, that question is generally answered by application of the "real party to the controversy" test. *Carden,* 494 U.S. at 187 n. 1, 110 S.Ct. at 1017 n. 1; 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1556 (2d ed.1990). Diversity must be complete between all of the plaintiffs and all of the defendants. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). If, however, one of the "nondiverse" parties is not a real party in interest, and is purely a formal or nominal party, his or its presence may be ignored in determining jurisdiction. *Salem Trust Co. v. Manufacturers' Fin. Co.,* 264 U.S. 182, 190, 44 S.Ct. 266, 267–68, 68 L.Ed. 628 (1924).

> This court will not suffer its jurisdiction to be ousted, by the mere joinder or nonjoinder of formal parties; but will rather proceed without them, and decide upon the merits of the case between the parties, who have the real interests before it, whenever it can be done, without prejudice to the rights of others.

*Wormley v. Wormley,* 21 U.S. (8 Wheat.) 421, 451, 5 L.Ed. 651 (1823); *see also Wood v. Davis,* 59 U.S. (18 How.) 467, 469, 15 L.Ed. 460 (1855). If on the other hand, the nondiverse party is a real party in interest, it is immaterial that his joinder was motivated by a desire to defeat jurisdiction. 14 Wright et al., *supra,* § 3641.

■ Federal Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest."[1] Under the rule, the real party in

---

1. Rule 17(a) provides:

   Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted

interest is the person who is entitled to enforce the right asserted under the governing substantive law. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors Inc.*, 630 F.2d 250, 256–57 (5th Cir.1980); *Simpson v. Providence Washington Ins. Group*, 608 F.2d 1171, 1173 n. 2 (9th Cir.1979); *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir.1977); 6A Wright et al., *supra*, §§ 1543–44. The real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984); *American Nat'l Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 459–60 (7th Cir.1982); 6A Wright et al., *supra*, § 1544 at 340. Of course, the governing substantive law in diversity actions is state law, and in this case that is Tennessee law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ We think that under Tennessee law the underwriters are "real parties in interest" because they are liable on the contract. They actually wrote the insurance, processed the claim, and are authorized to sue on the policy. The certificate of insurance and the policy itself states that the insurance is "effected with certain Underwriters at Lloyd's, London." Curiously, the syndicates insuring the risk are not listed anywhere on the policy. In writing this insurance policy, the underwriters functioned as agents for undisclosed principals, the syndicates. The language of this particular policy tracks the hornbook example of an undisclosed principal:

In contrast to the nonliability of the authorized agent making a contract for and on behalf of a disclosed principal, an insurance agent making a contract of insurance for an undisclosed principal becomes personally liable to the insured. For the purposes of this rule a binder signed by such agent for "account of Underwriters at Lloyd's London," is for undisclosed principals.

George J. Couch, *Couch on Insurance 2d* § 26A:289 at 559 (1984); *accord Annes v. Carolan–Graham–Hoffman, Inc.*, 336 Ill. 542, 168 N.E. 637 (1929); *Ell Dee Clothing Co. v. Marsh*, 247 N.Y. 392, 160 N.E. 651 (1928). Tennessee follows the venerable common law rule that an agent for an undisclosed principal is personally liable on a contract. *Anderson v. Durbin*, 740 S.W.2d 417, 418 (Tenn.Ct.App.1987). Restatement (Second) of Agency, § 322 states, in part: "An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract."

And an agent who makes a contract in his own name, without disclosing the identity of his principal, renders himself personally liable, even though the person with whom he deals knows that he is acting as agent, unless it affirmatively appears that it was the mutual intention of the parties to the contract that the agent should not be bound.

*Siler v. Perkins*, 126 Tenn. 380, 387, 149 S.W. 1060, 1061 (1912). A party who deals with such an agent may sue either the principal or the agent, but not both. *Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 925 (Tenn.Ct.App.1987).

When the defendants elected to sue the underwriters, they elected to sue the agent. The syndicates, as principal, therefore, were no longer liable to the defendants on the contract and, consequently, are not real parties in interest. Although initially there might have been a question whether the defendants elected to sue the agents since the

---

in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
Fed.R.Civ.P. 17(a). Rule 17(a) is not jurisdictional and relates only to the proper parties and

the capacity to sue. As the Supreme Court observed in *Navarro Savings Association v. Lee*, 446 U.S. 458, 462 n. 9, 100 S.Ct. 1779, 1782–83 n. 9, 64 L.Ed.2d 425 (1980), Rule 17(a) frequently overlaps with the jurisdictional rule that diversity jurisdiction depends on the citizenship of the real parties to the controversy, but "the two rules serve different purposes and need not produce identical outcomes in all cases."

suit originated as a declaratory judgement action brought by the underwriters, the defendants' counterclaim against "Certain Interested Underwriters at Lloyd's, London, England" seems to be a clear election to sue the agent. Since the underwriters are British citizens and the defendants are citizens of Tennessee, the parties are completely diverse and jurisdiction under 28 U.S.C. § 1332(a)(2) was properly invoked.

## III.

For the foregoing reasons, we **AFFIRM**.