**NORTHLAND INSURANCE COMPANY and John Fenn for and on behalf of Syndicate 529 and all Underwriters subscribing to Lloyd's Policy Number G712119, Plaintiffs,**

v.

**ARTHUR HILL & ASSOCIATES, Arthur Hill, and A.W. Hills, Inc., Defendants.**

**No. 00–72475.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 4, 2001.

Dennis M. Goebel, Troy, MI, for plaintiff.

James R. Case, Detroit, Andrew J. Broder, Bingham Farms, MI, for defendant.

## OPINION AND ORDER REGARDING DIVERSITY JURISDICTION

ROSEN, District Judge.

### I. *INTRODUCTION*

Since it was initially removed to this Court on June 1, 2000, this case has presented a variety of challenging and evolving issues that cast doubt on the threshold question of this Court's subject matter jurisdiction. First, on July 14, 2000, this Court entered an Order identifying a number of defects in Defendants' notice of removal, and directing Defendants to address the issues of fraudulent joinder and the citizenship of the parties. Through their initial responses to the July 14 Order, the parties largely resolved these matters, leaving only the question of how this Court should analyze, for purposes of the diversity of citizenship requirement and its attendant amount in controversy inquiry, the Plaintiff designated in the case caption as "John Fenn for and on behalf of Syndicate 529 and all Underwriters subscribing to Lloyd's Policy Number G712119."

The parties have now briefed this question, and their counsel presented further arguments at a hearing held on December 7, 2000. Having reviewed the briefs and other materials in the record, and having considered the arguments of counsel at the December 7 hearing, the Court now is

prepared to rule on the issue of its subject matter jurisdiction. This Opinion and Order sets forth the Court's ruling.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

At this threshold stage of the proceedings, the factual record necessarily is limited, and only a portion of this record is relevant to the present inquiry. This case arises from the construction in the mid–1990s of the Lakes of Taylor Golf Course in Taylor, Michigan. During the construction process, neighboring properties allegedly were damaged, leading to state court suits by adjacent property owners against the City of Taylor. According to the instant Complaint, the Plaintiff insurers, Northland Insurance Company[1] and the Lloyd's of London collective, provided a defense to the City of Taylor in the property owners' suits. Plaintiffs and the City ultimately elected to settle these suits, with Plaintiffs allegedly paying settlement amounts totaling $432,000 and incurring an additional $32,553 in expert fees.

In the present action, brought on May 8, 2000 in Wayne County Circuit Court, State of Michigan, Plaintiffs have asserted contribution and equitable subrogation claims against certain contractors involved in the construction of the Lakes of Taylor Golf Course. Plaintiffs allege that these contractors are responsible for any damages incurred by the neighboring property owners, and they seek to recover some or all of the amounts paid by the insurers to defend the City of Taylor and settle the property owners' suits. Defendants removed the case to this Court on June 1, 2000, citing diversity of citizenship as the basis for this removal. One of the Defendant contractors, Wade–Trim Associates, has been dismissed from this action by agreement of the parties, on the ground that Plaintiffs' claims against this Defendant are subject to arbitration.

This leaves Arthur Hill & Associates, Arthur Hill, and A.W. Hills, Inc. as the remaining Defendants, all of which are Ohio corporations. Although the record is not entirely clear on this point, it appears that Plaintiff Northland is a Missouri corporation with its principal place of business in Minnesota. Thus, complete diversity of citizenship exists so long as the remaining Plaintiff insurer, the Lloyd's of London collective, is deemed not to be a citizen of Ohio. In addition, where the total payout by the Plaintiff insurers allegedly exceeded $450,000, and where this total sum apparently was allocated 70/30 percent between Northland and the Lloyd's collective, the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied so long as the 30–percent share sought by the Lloyd's collective is viewed as a single, indivisible amount. Accordingly, the Court now turns to these remaining jurisdictional issues.

## III. *ANALYSIS*

### A. The Applicability of the Sixth Circuit's *Layne* Decision

■ The principal task now before this Court is to determine the citizenship of the Plaintiff (or Plaintiffs) designated in the case caption as "John Fenn for and on behalf of Syndicate 529 and all Underwriters subscribing to Lloyd's Policy Number G712119." This task is considerably complicated by the peculiar nature of Lloyd's of London, which cannot be viewed as a traditional corporate insurer. Fortunately, this Court has the benefit of the decision in *Certain Interested Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39 (6th Cir.1994), in which the Sixth Circuit examined this matter at length:

The rules for diversity jurisdiction are straightforward. The difficulty arises in applying them to Lloyd's of London— that venerable institution shrouded in the corporate vagaries of British law.

---

**1.** From the insurance policies and other evidence submitted to the Court, it appears that

the proper designation of this party is "Northfield Insurance Company."

The corporation Lloyd's of London is not actually in the insurance business. Rather, the corporation provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's....

The business of insuring risk at Lloyd's is carried on by a group of more than four hundred syndicates. These syndicates are not incorporated, and they are comprised of some 30,000 member-investors, sometimes called "underwriters" or "names," who hope to share in any profit the syndicate might make. A particular syndicate may have a few hundred or many thousand investors. These investors, however, do not actively participate in the insurance business. In this regard, a Lloyd's syndicate is analogous to a limited partnership; however, unlike limited partners, syndicate members have unlimited partnership liability for their share of the syndicate's losses.

Each syndicate is managed on a day-to-day basis by an underwriter appointed or nominated by the syndicate. These underwriters, sometimes called agent-underwriters or active-underwriters, buy and sell insurance risks and if successful make a profit for their syndicate. The underwriter has the authority to bind the syndicate members in these transactions. Also, the underwriter has the authority to bring a lawsuit on behalf of the syndicate members.

An insurance policy is obtained by contacting an insurance broker, known as a Lloyd's broker, who insures part of the risk with an underwriter representing a syndicate, known as the lead syndicate. The broker then insures the rest of the risk through agreements with other underwriters representing other syndicates. Consequently, any single risk is insured by more than one syndicate. By the terms of a Lloyd's policy, each of the member-investors in the subscribing syndicates binds himself for his individual portion of the risk.

In a nutshell, Lloyd's consists of unincorporated groups of investors, called syndicates, who appoint agents, called underwriters, to act on their behalf. But for purposes of establishing diversity jurisdiction, whose citizenship counts: the agent-underwriters' or the syndicate members'?

*Layne,* 26 F.3d at 41–42 (citations omitted).

*Layne* concluded that the diversity inquiry in that case should be resolved solely by reference to the citizenship of the agent-underwriters, and not the individual members of each syndicate. The Sixth Circuit reached this result by applying the "real party to the controversy" test, reasoning that formal or nominal parties typically are ignored in determining the existence of diversity jurisdiction. The Court then drew an analogy between an agent-underwriter acting on behalf of a Lloyd's syndicate and a traditional agent acting on behalf of an undisclosed principal:

We think that under Tennessee law the underwriters are "real parties in interest" because they are liable on the contract. They actually wrote the insurance, processed the claim, and are authorized to sue on the policy. The certificate of insurance and the policy itself states that the insurance is "effected with certain Underwriters at Lloyd's, London." Curiously, the syndicates insuring the risk are not listed anywhere on the policy. In writing this insurance policy, the underwriters functioned as agents for undisclosed principals, the syndicates. The language of this particular policy tracks the hornbook example of an undisclosed principal.... Tennessee follows the venerable common law rule that an agent for an undisclosed principal is personally liable on a contract.... A party who deals with such an agent may sue either the principal or the agent, but not both.

When the defendants elected to sue the underwriters [in a counterclaim], they elected to sue the agent. The syn-

dicates, as principal, therefore, were no longer liable to the defendants on the contract and, consequently, are not real parties in interest. Although initially there might have been a question whether the defendants elected to sue the agents since the suit originated as a declaratory judgment action brought by the underwriters, the defendants' counterclaim against "Certain Interested Underwriters at Lloyd's, London, England" seems to be a clear election to sue the agent. Since the underwriters are British citizens and the defendants are citizens of Tennessee, the parties are completely diverse....

26 F.3d at 43–44 (citations omitted).

As noted in this Court's September 5, 2000 Order, at least two other circuits have declined to follow *Layne. See E.R. Squibb & Sons, Inc. v. Accident & Casualty Ins. Co.,* 160 F.3d 925, 930–31 (2d Cir.1998); *Indiana Gas Co. v. Home Ins. Co.,* 141 F.3d 314, 318–19 (7th Cir.1998). Nevertheless, as stated in the September 5 Order, this Court is not free to do likewise and reject the Sixth Circuit's ruling in *Layne,* at least absent some basis for distinguishing that decision. *See also Aetna Casualty & Surety Co. v. Dow Chemical Co.,* 44 F.Supp.2d 870, 879–80 (E.D.Mich. 1999) (recognizing other circuits' disagreement with *Layne,* but determining that the Sixth Circuit's decision controlled in that case). Accordingly, at the Court's request, the parties have submitted briefs on the question whether *Layne* should govern the present jurisdictional inquiry.

 Clearly, one possible basis for distinguishing *Layne* might be found in its application of the Tennessee law of agency. In contrast, Michigan law applies here. Yet, all are agreed that Michigan law, like Tennessee law, holds an agent personally liable when contracting on behalf of an undisclosed principal. *See Old Ben Coal Co. v. Universal Coal Co.,* 248 Mich. 486, 227 N.W. 794, 795 (1929); *Detroit Pure Milk Co. v. Patterson,* 138 Mich.App. 475, 360 N.W.2d 221, 222–23 (1984). The liabil-

ity of the agent and principal is not joint but alternative, and the aggrieved party may elect to recover from either the agent or the principal. *See Old Ben Coal Co.,* 227 N.W. at 795.

Nevertheless, in arguing that this Court lacks subject matter jurisdiction, Plaintiffs identify two purported factual distinctions between *Layne* and this case. First, they assert that the principals here were not truly undisclosed at the time of contracting, because the insurance policy at issue expressly revealed the syndicates insuring the risk, listing them by syndicate number and percentage of risk. (*See* Plaintiffs' 10/12/00 Reply Br., Ex. A, City of Taylor Insurance Policy.) In *Layne,* by contrast, "the syndicates insuring the risk [we]re not listed anywhere on the policy." *Layne,* 26 F.3d at 43. Next, Plaintiffs note that *Layne* featured an election by the defendant policyholder to assert a counterclaim against the agent-underwriters, rather than the syndicates as principals. In contrast, no counterclaims have been asserted here, and Defendants, therefore, have not elected the agents over the principals.

As to this latter point, the Court finds it insufficient to distinguish this case from *Layne.* The Court does not read *Layne* as limited to the situation where a policyholder elects to sue only the agent-underwriters, rather than the syndicates that collectively insure the risk. If that were so, the *Layne* Court seemingly should have concluded that diversity of citizenship existed as to the defendant policyholder's counterclaim, but not as to the initial declaratory judgment action brought by the underwriters against the policyholder. Yet, the Sixth Circuit's decision makes no distinction between the underwriters' claim and the policyholder's counterclaim. Indeed, it is worth noting that, by bringing their declaratory judgment action in federal court, Lloyd's underwriters evidently took the position in *Layne,* as they have in other cases, *see, e.g., Aetna Casualty,* 44 F.Supp.2d at 879–80; *Humm v.*

*Lombard World Trade, Inc.*, 916 F.Supp. 291, 297 (S.D.N.Y.1996), that agent-underwriters may sue on behalf of their syndicates, and that only the citizenship of the agent-underwriters need be considered in determining whether there is diversity jurisdiction. Plainly, the position taken by Plaintiffs here is directly contrary to the assertions made by Lloyd's underwriters in prior cases, where they sought to remain in federal court.[2]

Nevertheless, the Court agrees with Plaintiffs that the disclosure of the syndicate-principals in the insurance policy at issue here suffices to take this case outside of the rule announced in *Layne*. Simply stated, there are no undisclosed principals here, and so the agent-underwriters could not be held personally liable under the policy, even if the policyholder had attempted to bring suit against them.[3] Indeed, on the same page which discloses the participating syndicates and their respective percentages of the insured risk, the policy further provides that "[w]e the Underwriters, Members of the Syndicates" set forth in the policy, "hereby bind ourselves ... in respect of [our] due proportion only," and that these proportions of liability may be "ascertained by reference to" a "List of Underwriting Members of Lloyd's" which shows each member's "respective Syndicates and Shares therein." (Plaintiffs' 10/12/00 Reply Br., Ex. A.) This

paragraph of the policy also incorporates by reference the "List of Underwriting Members." (*Id.*) Thus, by reference to the policy and its incorporated list of underwriters, the policyholder may determine the identities of the particular syndicates which agreed to insure the risk, *as well as* the identities of the individual members of each participating syndicate and their respective shares of the risk. This, in the Court's view, represents a full disclosure of the identities of all principals, even if the principals are viewed as the individual constituent members of each participating syndicate, rather than the syndicates themselves.

## B. The "Real Party to the Controversy" Test

Accordingly, because *Layne* does not control here, the Court must consider anew who are the "real parties to the controversy." The case caption alone cannot resolve this question. *See Aetna Casualty*, 44 F.Supp.2d at 874.[4] Rather, the inquiry turns on the distinction between "real and substantial parties to the controversy" and "nominal or formal parties." *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460–61, 100 S.Ct. 1779, 1781–82, 64 L.Ed.2d 425 (1980).

Under this test, the Court sees no basis for excluding the individual members of

2. Given this clear contradiction, the Court finds it unnecessary to act upon Defendants' request that the Court examine certain sealed pleadings and papers filed in *Aetna Casualty* to determine whether they contain factual assertions contrary to the position being advanced by Plaintiffs in this case.

3. Of course, the policyholder, the City of Taylor, is not even a party to this suit. However, because there is no undisclosed principal here, the Court need not decide whether complete strangers to an insurance policy or contract, such as Defendants here, can claim the benefit of the law governing agents of undisclosed principals.

4. In any event, the caption in this case is somewhat ambiguous. The Plaintiff in question is designated as "John Fenn for and on behalf of Syndicate 529 and all Underwriters

subscribing to Lloyd's Policy Number G712119." Thus, the Complaint designates a single individual, John Fenn (who, parenthetically, has been discovered not to be the lead underwriter after all—the lead underwriter actually is Adrian Underwood), as the representative of his own syndicate and "all underwriters" subscribing to the underlying Lloyd's policy. As noted in *Layne*, the term "underwriter" may be viewed as synonymous with "names" or "members" of a syndicate, or it may refer to the specific individual designated by a syndicate to serve as its agent in buying and selling insurance risks. *Layne*, 26 F.3d at 42. It is not clear, therefore, whether the caption encompasses only the latter "agent-underwriters" or all underwriters, in the broad sense, who carry any portion of the insured risk.

each participating syndicate as "real parties to the controversy." Each of these members has assumed—and presumably paid—a share of the liability incurred by the City of Taylor in its disputes with property owners. Through the present action, each of these members seeks to recover some or all of the amount he or she paid out to settle the state-court suits brought against the City. Although these members apparently have designated one individual as the "lead underwriter" to represent their interests in this litigation, the Supreme Court has rejected the notion that control over litigation may serve as a basis for consulting less than all of the members of an "artificial entity," such as the syndicates here, in determining the citizenship of that entity. *See Carden v. Arkoma Associates*, 494 U.S. 185, 192–95, 110 S.Ct. 1015, 1020–21, 108 L.Ed.2d 157 (1990); *see also Humm*, 916 F.Supp. at 298–99 (citing *Carden* in concluding that each member of a participating Lloyd's of London syndicate is a real party in inter-

est, because each is severally liable for the syndicates' risk under the Lloyd's policy).

Consequently, though the question is a close one, the Court finds that it must determine the citizenship of the Lloyd's collective in this case by reference to each member of each participating syndicate. Plaintiffs have produced the declaration of Douglas King, a senior adjuster for Lloyd's, stating that eight members of the eleven syndicates named in the City of Taylor policy are residents of Ohio. (Plaintiffs' 10/12/00 Reply Br., Ex. B at ¶ 5.) Defendants do not dispute this assertion. Therefore, complete diversity does not exist, and this Court lacks subject matter jurisdiction.[5]

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that this case be REMANDED to Wayne County Circuit Court, State

---

5. Alternatively, even if the parties' citizenship were completely diverse, there would remain the question whether the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied here. *Layne* seems to indicate that it is not. In that case, the Sixth Circuit looked to the citizenship of the agent-underwriter for *each* participating syndicate, and found (as is true here) that each of these agent-underwriters was a British citizen. 26 F.3d at 43–44. If, as Defendants contend, *Layne* were controlling here, this Court seemingly would be compelled to view each Lloyd's syndicate as representing a separate legal interest. Under this standard, none of the syndicates in this case would meet the $75,000 threshold. The total recovery sought by all Plaintiffs is roughly $450,000, and the syndicate holding the largest share under the Lloyd's policy, Syndicate 529, has borne only 5.26 percent of the overall risk. As confirmed in the King declaration, this means that Syndicate 529 seeks a recovery of less than $24,000, and the other Lloyd's syndicates seek less than that. It follows that each syndicate's claim, viewed separately in accordance with *Layne*, does not satisfy the statutory amount in controversy requirement. *But see Aetna Casualty*, 44 F.Supp.2d at 880 (construing *Layne* as indicating that the Court should look to the overall value of the Lloyd's policy to determine the amount in controversy). Given the Court's conclusion that diver-

sity is lacking, it need not decide this question.

In addition, though Defendants do not appeal to this Court's supplemental jurisdiction under 28 U.S.C. § 1367, at least one court has held that a plaintiff whose claims fail to satisfy the amount in controversy requirement, but who is a "permissive" party under Fed. R.Civ.P. 20, may join his claims to those of a fellow plaintiff with the requisite amount in controversy, under the federal courts' "pendent-party" jurisdiction. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 930–32 (7th Cir.1996). If this rule were applied here, the Lloyd's party (or parties) could be joined with fellow Plaintiff Northland, which clearly does satisfy the $75,000 amount in controversy requirement. However, a number of courts, including this one, have declined to adopt the Seventh Circuit's reasoning in *Stromberg*. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 960–62 (8th Cir.2000); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218–22 (3d Cir.1999); *Casteel v. Sara Lee Corp.*, 51 F.Supp.2d 816, 820–22 (E.D.Mich.1999) (Gadola, J.). Because Defendants did not raise the issue of supplemental jurisdiction, and because no court in this Circuit has followed the Seventh Circuit's *Stromberg* decision, this Court declines to weigh in on this difficult question.

of Michigan, for lack of a proper jurisdictional basis for its removal to this Court.