**MAJESTIC INSURANCE COMPANY, Plaintiffs,**

**v.**

**ALLIANZ INTERNATIONAL INSURANCE COMPANY, et al., Defendants.**

No. C 00–1804 SC.

United States District Court, N.D. California.

March 9, 2001.

Thomas S. Clifton, Nicole L. Meredith, Vogel & Meredith, San Francisco, CA, Andre Hassid, Law Office of Andre Hassid & Associates, Moraga, CA, for Plaintiffs.

James D. Boughey, Laura J. Ruettgers, David F. Mangini, Boughey, Garvie, Bushner & Ridley, San Francisco, CA, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

CONTI, District Judge.

### I. INTRODUCTION

In this reinsurance dispute, plaintiff Majestic Insurance Company ("Plaintiff") seeks declaratory relief, attorney's fees, punitive damages, and profit disgorgement from at least fifty individual insurance company defendants that are members of the Institute of London Underwriters ("ILU Defendants") and at least seventy-two underwriters acting on behalf of Members of Lloyd's, London ("Lloyd's Defendants") for breach of contract, contract reformation, breach of the covenant of good faith and fair dealing, and unlawful business practices under California Business and Professions Code Section 17200. Defendants now move for dismissal on the grounds that this Court lacks subject matter jurisdiction. For the reasons set forth herein, Defendants' motion is HEREBY GRANTED.

### II. BACKGROUND

This case delves into the intricacies and sometimes archaic complexities of the London Marine Insurance Market (the "London Market"). At its core, the case concerns reinsurance policies placed in the London Market with insurance company members of the ILU, and individual underwriter members of Lloyd's. Lloyd's of London, the venerable institution associated world-wide with the insurance business, is not actually an insurance company. Rather, it provides a market for the buying and selling of insurance risk among its members.

Lloyd's members are anonymous underwriters commonly referred to as "Names." These Names invest in a percentage of an insurance policy risk. Each Name is exposed to unlimited liability, but only for the share of the loss on a policy that the Name has written. In other words, the liability of a given Name on any given policy is several, and not joint.

Individual Names do not actively participate in the insurance business. Names belong to subgroups, known as "Syndicates." Syndicates are comprised of anywhere from a few hundred to a few thousand Names. They are analogous to a limited partnership, though each individual name has unlimited liability for their share

of the Syndicate's losses, and they are not a legal entity. The individual Names in a Syndicate do not manage their own investments. Instead, each Syndicate appoints one of its Names to represent the collective interests of the Names in that Syndicate. This person is known as the "lead" or "active" underwriter. This Name subscribes to insurance risks on behalf of the Names in that Syndicate.

Lloyd's insurance policies are obtained through a broker, known as a Lloyd's broker, who insures part of the risk with a lead underwriter of a Syndicate. The broker then approaches other syndicates who are likely to follow the lead underwriter's decisions until the desired participation in the insurance has been completed. Thus, any single risk is insured by multiple Syndicates. Since many Names from various Syndicates are involved in each individual policy, the lead underwriter from one of the Syndicates usually is designated as the representative for all the Names and relevant Syndicates with respect to that Policy. It is often only that Name which is disclosed on the actual insurance policy.

Plaintiff, a California corporation, alleges that it is a predecessor-in-interest or successor-in-interest to Continental Maritime Industries, Marine Terminals Corporation, Service Engineering Corporation, and Redhorse Insurance Company, which are each insureds under the contracts at issue here. Plaintiff wrote workers compensation insurance under both the California compensation system and the United States Longshore & Harbor Workers Compensation Act (the "Longshore Act"). Between 1985 and 1992, Plaintiff purchased numerous reinsurance policies in the London Market. These policies were specific loss excess reinsurance policies, arranged in layers of excess of Plaintiff's retention on a specific claim.

Plaintiff alleges that Defendants failed to comply with their reinsurance obligations as required by the aforementioned policies. Plaintiff filed the present action on October 31, 2000 seeking declaratory relief, attorney's fees, punitive damages, and profit disgorgement for claims including breach of contract, contract reformation, breach of the covenant of good faith and fair dealing, and unlawful business practices under California Business and Professions Code Section 17200. Defendant filed a "Suggestion of Lack of Federal Jurisdiction" seeking to dismiss the case on December 20, 2000.

### III. LEGAL STANDARD

Federal courts have limited subject matter jurisdiction. They are restricted as to what cases they may adjudicate and they may exercise jurisdiction only if it is specifically authorized. Article III, Section 2 of the Constitution authorizes federal court jurisdiction for suits between citizens of different states. Jurisdiction based on this circumstance is termed "diversity jurisdiction," and its requirements are detailed in 28 U.S.C. § 1332. That provision states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332.

### IV. ANALYSIS

The proper exercise of diversity jurisdiction requires satisfaction of two elements. First, that the parties are diverse, or citizens of different states. In order for the parties to fulfill this requirement there must be "complete diversity." That is, no plaintiff can be a citizen of the same state as any of the defendants. *Strawbridge v. Curtiss*, 7 U.S. 267, 3 Cranch 267, 2 L.Ed. 435 (1806). Second, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). The party seeking to establish diversity jurisdiction has the burden of proof with respect to each of these elements. *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). If both these requirements are

met, then the Court properly has jurisdiction to hear the matter at hand.

Defendants attack Plaintiff's complaint concerning both of these requirements. First, Defendants claim that the parties are not completely diverse. Second, Defendants claim that even if the parties are completely diverse, that Plaintiff cannot establish the jurisdictional minimum amount of $75,000. The Court agrees with Defendants, and finds that Plaintiff has not met its burden of alleging complete diversity.

### A. Complete Diversity

■ The unique nature and structure of Lloyd's raises several issues in determining jurisdiction. In the context of this case, this structure raises the question of whose citizenship should be considered for determining diversity. Specifically, the present motion concerns whether only the Lloyd's representative lead underwriter needs to meet the diversity requirements, or whether each and every Name represented must be of diverse citizenship. If the lead underwriter is the proper focal point, then there is no jurisdiction problem in this case. On the other hand, if the citizenship of each Name must be considered, then dismissal is warranted.

The Ninth Circuit has not yet spoken on whose citizenship controls when Lloyd's of London is involved in a diversity action. Three circuits, the Second, Sixth, and Seventh, have considered the issue. *See E.R. Squibb & Sons v. Accident & Casualty Insurance Co.*, 160 F.3d 925 (2d Cir.1998); *Certain Interested Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39 (6th Cir.1994); *Indiana Gas Co. v. Home Insurance Co.*, 141 F.3d 314 (7th Cir.). As expected, the three circuits do not agree. While the Second and Seventh circuits have found that the citizenship of the individual Names controls for diversity determinations, the Sixth Circuit found that the citizenship of the active underwriter controls. *See Squibb*, 160 F.3d at 931; *Layne*, 26 F.3d at 43; *Indiana Gas Co.*, 141 F.3d at 319.

Plaintiff urges this Court to follow the reasoning of the Sixth Circuit. In *Layne*, the Plaintiffs, listed as "Certain Interested Underwriters at Lloyd's," sued an insured party for declaratory relief denying coverage. *Layne*, 26 F.3d at 41–43. Defendants moved to dismiss the complaint for lack of diversity jurisdiction, claiming that some of the Plaintiffs were, like certain defendant Names, citizens of Tennessee. The district court denied the motion, and Plaintiffs later won a jury verdict at trial.

On appeal, the Sixth Circuit answered the question of which parties before the court should be considered for determining whether complete diversity exists by applying the "real party to the controversy" test. *Id.* at 42 (citing *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 n. 1, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)). While diversity must be complete between the parties, if a "non-diverse" party is purely formal or nominal, it is not a real party in interest. Therefore, that party's presence may be ignored for the purposes of determining diversity jurisdiction. *Salem Trust Co. v. Manufacturers' Fin. Co.*, 264 U.S. 182, 190, 44 S.Ct. 266, 68 L.Ed. 628 (1924).

The Sixth Circuit continued by stating that, at its core, the real party in interest analysis turns on whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief. *Id.* at 43. The Sixth Circuit concluded that, "the underwriters are 'real parties in interest' because they are liable on the contract. They actually wrote the insurance, processed the claim, and are authorized to sue on the policy." *Id.* For this reason, the Sixth Circuit found that diversity existed, even if certain individual Names may not have been completely diverse.

Plaintiff seeks a similar ruling here. Plaintiff argues that the lead underwriters are agents for the Names, who are analogous to undisclosed principals. As the Names are not contained on the policies, they cannot be considered real parties in interest. Instead, Plaintiff concludes, the

managing, or lead, underwriter for each syndicate should be considered the real parties in interest. Each of the lead underwriters are citizens of the U.K., and complete diversity would exist between the parties.

Defendants agree that the real parties in interest test should apply. However, as with the Second and Seventh Circuits, Defendants believe that application of such an analysis yields the conclusion that the Names themselves are the real parties in interest. In *Indiana Gas,* the Seventh Circuit noted that "[e]very name in a syndicate faces unlimited personal liability, like a general partnership. Syndicates are run, however, much like limited partnerships, with a lead member (the active underwriter or managing agent) able to transact business without consulting the investors." *Indiana Gas,* 141 F.3d at 316. The Court concluded that because "general partnerships, limited partnerships, joint stock companies, and unincorporated associations are all treated as citizens of every state of which any partner or member is a citizen," so should underwriting syndicates have the citizenship of each Name. *Indiana Gas,* 141 F.3d at 317.

The Second Circuit, in *Squibb,* engaged in a more extensive analysis while reaching the same conclusion as the Seventh Circuit. The Court stated that the "general rule undoubtedly is that the federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists." *Squibb,* 160 F.3d at 931 (internal citations and quotations omitted). The Court then analyzed whether the Lloyd's syndicates and Names fit into one of the three principal exceptions to this rule: corporations, trusts, and class actions.

For corporations, the citizenship of the corporation alone matters, regardless of the citizenship of any individual shareholder. The shareholders' citizenship may therefore be ignored. However, as Syndicates are *unincorporated* associations, the

Second Circuit found that this exception was not relevant.

For trusts, the Supreme Court has deemed the citizenship of the trustees to be determinative. *Navarro Savings Ass'n v. Lee,* 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). The Second Circuit, agreeing with the Seventh Circuit's opinion in *Indiana Gas,* found that the lead Lloyd's underwriter cannot be considered a trustee for jurisdictional purposes. The Court found that, while "Trustees own the corpus; ownership is what distinguishes a trustee from an agent," the lead underwriters of the Syndicates do not own the wealth of the Syndicate's Names, nor exercise over it any dominion other than the power to underwrite risks. *Squibb,* 160 F.3d at 930.

Finally, for class actions, the Supreme Court has found that only the citizenship of the class representatives is relevant for the establishment of diversity jurisdiction. *See Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). The Second Circuit found that essentially converting a suit against the Lloyd's underwriters into a class action would undermine the substantive distinction between Rule 23 classes and limited partnerships. *Squibb,* 160 F.3d at 931. Consequently, the Second Circuit concluded that each Name must be completely diverse from the Plaintiff in order to satisfy the jurisdictional requirements.

■ After careful consideration, the Court agrees with the Second Circuit's analysis. The Syndicate has the personal-liability characteristics of a general partnership and the management structure of a limited partnership. While the individual Names may be represented in certain negotiations and agreements, the general rule is that the Court must look at the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists. As with the Second Circuit, the Court finds that none of the exception to this general rule— corporations, trustees, and class ac-

 

tions— applies in this case. The Syndicates are not incorporated, do not have the structure of a trust, and should not be converted into a Rule 23 class simply to find diversity jurisdiction. Therefore, the Court, following the reasoning of the Second and Seventh Circuits, finds that each Name must be diverse from Plaintiff to satisfy diversity jurisdiction requirements.

■ Plaintiff contends that Defendants should be estopped from arguing that the citizenship of each individual Name should be considered for determining diversity jurisdiction due to inconsistent positions taken in prior litigation. The Court has discretion to exercise judicial estoppel in order to protect the integrity of the judicial process. *Interstate Fire & Casualty Co., v. Underwriters of Lloyd's, London,* 139 F.3d 1234, 1239 (9th Cir.1998). However, judicial estoppel applies "when a party's position is tantamount to a knowing misrepresentation, or even fraud on the court." *Fredenburg v. Contra Costa Co. Department of Health,* 172 F.3d 1176, 1179 (9th Cir.1999). Plaintiff has made no showing that Defendants' representations in any case require the application of judicial estoppel in this case.

Plaintiff bears the burden of establishing complete diversity. *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673. Defendants have submitted evidence demonstrating that certain individual Names are residents of California. As such, these individual Names are not diverse from Plaintiff, who is also a California resident. Lacking any demonstration that these Names are not residents of California, Plaintiff has failed to meet its burden. Consequently, the Court lacks subject matter jurisdiction and the present action must be dismissed.

### B. Amount In Controversy

Defendants also argue that Plaintiff cannot establish the required amount in controversy. As the Court has determined that Plaintiff failed to meet its burden of establishing complete diversity, the Court need not consider this issue.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of jurisdiction is HEREBY GRANTED.

IT IS SO ORDERED.