United States Court of Appeals
Fifth Circuit

**F I L E D**

December 29, 2003

Charles R. Fulbruge III
Clerk

REVISED JANUARY 6, 2004
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-10185

THOMAS ROKEBY CONYNGHAN CORFIELD, ET AL.,

Plaintiff-Appellee,

versus

DALLAS GLEN HILLS LP,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
USDC No. 02-CV-01781
--------------------

Before GARWOOD and JONES, Circuit Judges, and ZAINEY, District
Judge[*]

ZAINEY, District Judge:

In this declaratory judgment action, Plaintiff Liberty

Corporate Capital, Ltd. ("Liberty") appeals from the district

court's grant of Defendant Dallas Glen Hills LP's ("DGH") motion

to dismiss for lack of subject matter jurisdiction. The appeal

presents an issue of first impression in our circuit regarding

how the citizenship of a Lloyd's of London underwriter suing on

its own behalf is to be determined for diversity purposes. The

district court concluded that the citizenship of every

underwriter subscribing to a Lloyd's policy must be considered

_____

[*] District Judge of the Eastern District of Louisiana,
sitting by designation.

when determining whether complete diversity exists.  We disagree

and therefore conclude that the district court erred in

dismissing the action.  Accordingly, we REVERSE and REMAND.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2000, DGH claimed an insured commercial property

loss on Lloyd's of London policy CRCTX99-1128 ("the Policy").

Liberty, acting through its wholly-owned subsidiary Liberty

Syndicate 190 ("Syndicate 190") assigned an adjuster to inspect

the property.  Liberty determined that the policy provided no

coverage for the claim.  The Policy has a $500,000.00 limit of

which Liberty insured 32.79 percent of the risk.[1]

Thomas Rokeby Conynghan Corfield ("Corfield"), a British

subject and "active" underwriter for Syndicate 190, filed a

declaratory judgment action on his own behalf *and as the

representative of Certain Underwriters at Lloyd's, London

subscribing to the Policy* seeking a declaration of the parties'

rights and obligations under the Policy.  Corfield alleged that

jurisdiction was based upon diversity of citizenship pursuant to

28 U.S.C. § 1332.[2]  However, Corfield's complaint failed to

_____

[1] Liberty subscribed to a percentage of risk greater than
that assumed by any other Name subscribing to the Policy.  Thus,
Liberty controls all decisions with regard to claims made under
the Policy and the prosecution or defense of lawsuits.

[2] 28 U.S.C. § 1332 provides in pertinent part:

> The district courts shall have original jurisdiction
> of all civil actions where the matter in controversy
> exceeds the sum of or value of $75,000, exclusive of
> interest or costs, and is between--

allege DGH's citizenship. Corfield alleged only that DGH was a Texas limited partnership.

The district court issued an order noting that Corfield had failed to properly allege DGH's citizenship because the complaint did not allege the citizenship of each of DGH's partners.[3] Moreover, the district court questioned whether Corfield had properly pleaded his own citizenship given that he had brought suit both on his own behalf *and as the representative of the other underwriters on the Policy*. Noting that the Seventh Circuit considers the citizenship of every underwriter subscribing to a Lloyd's policy for diversity purposes, Indiana Gas Co. v. Home Insurance Co., 141 F.3d 314, 319 (7th Cir. 1998), the district court ordered Corfield to either plead his citizenship in accordance with the Seventh Circuit's approach or submit a memorandum brief explaining why Corfield's British citizenship alone should control.

In response to the district court's order, Liberty replaced Corfield as the named plaintiff and filed an amended complaint.

---

. . .
    (2) citizens of a State and citizens or subjects of a foreign state;
    (3) citizens of different States an in which citizens or subjects of a foreign state are additional parties . . . .

28 U.S.C. § 1332(a)(2), (3).

[3] Because DGH is a limited partnership, it assumes the citizenship of each of its partners. See Carden v. Arkoma Assocs., 494 U.S. 185, 110 S. Ct. 1015, 108 L. Ed. 2d 157 (1990).

Liberty, the lead underwriter on the Policy, is a British corporation incorporated, domiciled, and with its principal place of business in the United Kingdom. As with Corfield, Liberty alleged British citizenship and sought relief on its own behalf *and as the representative of all other underwriters subscribing to the Policy*. Recognizing that the amended complaint did nothing to allay the jurisdictional concerns raised by the district court, Liberty amended its complaint a second time. In the second amended complaint Liberty sought relief on its own behalf *and as the lead underwriter of those underwriters subscribing to the Policy*. Again, however, Liberty failed to affirmatively allege DGH's citizenship, instead alleging that none of DGH's partners were British citizens.

The district court entered a second order, this time threatening to dismiss the action without prejudice unless Liberty amended its complaint to properly allege DGH's citizenship. The district court agreed to defer consideration of Liberty's citizenship given the split in authority concerning how the citizenship of a Lloyd's underwriter is to be determined and given that DGH had not yet moved to dismiss the case. Liberty amended its complaint once more to allege that all of DGH's partners were believed to be citizens of Texas, and that no partner was a citizen of the United Kingdom.

DGH moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

DGH argued that for diversity purposes the district court must consider the citizenship of every underwriter subscribing to a Lloyd's policy when determining if complete diversity is satisfied.  DGH also asserted that at least one underwriter on the Policy was a citizen of Texas as was at least one of DGH's partners.  Thus, DGH argued that complete diversity was lacking.

Hoping to avoid dismissal, Liberty amended its complaint once more.  This time Liberty alleged claims *only on its own behalf as the lead underwriter on the Policy*.  Liberty deleted all allegations that it was suing in any type of representative capacity on behalf of the other underwriters.  Liberty also alleged that all of DGH's partners were either citizens of Texas, Delaware, and New York.  The district court nevertheless concluded that the citizenship of each underwriter subscribing to the Policy must be considered for purposes of determining whether complete diversity is satisfied.  Because DGH contended that at least one underwriter was a citizen of Texas, the district court concluded that the parties were not completely diverse.  The district court therefore granted DGH's motion to dismiss for lack of subject matter jurisdiction. Liberty timely appealed.

## DISCUSSION

### A.   Standard of Review

We review questions of law *de novo*.  Wilkerson v. United States of America, 67 F.3d 112, 115 (5th Cir. 1995) (citing Estate of Moore v. Comm'r, 53 F.3d 712, 714 (5th cir. 1995)).

The district court's dismissal for lack of subject matter jurisdiction turned solely on the legal question of how to determine the citizenship for a Lloyd's of London underwriter who sues only on its own behalf. We therefore review the district court's dismissal for lack of subject matter jurisdiction *de novo*. Beall v. United States of America, 336 F.3d 419, 421 (5th Cir. 2003).

## B.   Principles of Jurisdiction

The federal diversity statute provides that the district courts have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000 and is between citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(2). It is well-established that the diversity statute requires "complete diversity" of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants. Whalen v. Carter, 954 F.2d 1087, 1094 (5th Cir. 1992) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806); Mas v. Perry, 489 F.2d 1396, 1398-99 (5th Cir. 1974).

The "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Navarro Savings Assoc. v. Lee, 446 U.S. 458, 460, 100 S. Ct. 1779, 1781-82, 64 L. Ed. 2d 425 (1980) (citing McNutt v. Bland, 2 How. 9, 15, 11 L. Ed. 159 (1844); Marshall v.

<u>Baltimore & Ohio R. Co.</u>, 16 How. 314, 328-29, 14 L. Ed. 953 (1854); <u>Coal Co. v. Blatchford</u>, 11 Wall. 172, 177, 20 L. Ed. 179 (1871)).  Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.  <u>Id.</u> at 461, 100 S. Ct. at 1782.

The sole issue presented in this case is whether complete diversity requires that the court consider the citizenship of every underwriter subscribing to a Lloyd's of London policy when the lead underwriter sues only on its own behalf.  The issue is one of first impression in this circuit and several of our sister circuits have reached different conclusions.  However, before addressing the complex jurisdictional issues raised in this case, a basic understanding of the organizational structure of Lloyd's of London and the unique characteristics of a typical Lloyd's insurance policy is necessary.

## C.   Lloyd's of London

Lloyds of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market.  John M. Sylvester & Roberta D. Anderson, <u>Is It Still Possible To Litigate Against Lloyd's in Federal Court?</u>, 34 Tort & Ins. L.J. 1065, 1068 (1999).  The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's.  <u>Certain Interested Underwriters at Lloyd's, London v. Layne</u>, 26 F.3d 39, 41 (6th Cir. 1994) (citing Clifford Chance, <u>Doing Business in the United</u>

Kingdom, §§ 46.02, 46-6 to 46-8 (Barbara Ford, A.D.M. Forte, & Herbert Wallace eds. 1990); Eileen M. Dacey, The Structures of the Lloyd's Market, in Lloyd's, the ILU, and the London Insurance Market 1990, at 33, 49-0 (PLI Commercial Law & Practice Course Handbook Series No. 555, 1990)). Thus, a policyholder insures *at* Lloyd's but not *with* Lloyd's. Lee R. Russ & Thomas F. Segalla, Couch on Insurance §39:47 (3d ed. 1995) (citing Bickelhaupt, D., General Insurance 775 (1983, 11th ed.)).

The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Sylvester & Anderson, supra, at 1068. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. Squibb, 160 F.3d at 929. Lloyd's requires Names to pay a membership fee, keep certain deposits at Lloyd's, and possess a certain degree of financial wealth. Chemical Leaman Tank Liners, Inc. v. Aetna Cas. & Surety Co., 177 F.3d 210, 221 (3d Cir. 1999). Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Squibb, 160 F.3d at 929. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint. Id.

Most Names or investors do not actively participate in the insurance market on a day to day basis. Layne, 29 F.3d at 42.

Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." Id. at 41-42. In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. Squibb, 160 F.3d at 929; Chemical Leaman, 177 F.3d at 221. A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100 percent of the coverage provided by a policy. Sylvester & Anderson, supra, at 1068. The Syndicates themselves have been said to have no independent legal identity. Id. Thus, a Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, all liability is born by the individual Names who belong to the various Syndicates that have subscribed to a policy.

Each Syndicate appoints a managing agent who is responsible for the underwriting and management of each Name's investments. Chemical Leaman, 177 F.3d at 221. The managing agent receives this authority through contracts with each Name. Id. The managing agent, which is typically a legal entity, appoints one of its employees to serve as the "active" underwriter for the Syndicate. Id. at 222. The active underwriter selects the risks that the Names in the syndicate will underwrite and has the authority to bind all Names in the Syndicate. Id. The active

underwriter has the authority to buy and sell insurance risks on behalf of all Names in the syndicate, and to bind the Syndicate members in these transactions.  Layne, 26 F.3d at 42.

In practice, since many Names through their respective Syndicates are liable on a Lloyd's policy, the active underwriter from *one* of the underwriting Syndicates is designated as the representative of *all* the Names on the policy.  Squibb, 160 F.3d at 929.  This single underwriter, called the "lead" underwriter on the policy, is usually the only Name disclosed on the policy with all other Names remaining anonymous.  Id.  The lead underwriter is typically the first to subscribe to the policy and typically assumes the greatest amount of risk.  The Lloyd's corporate entity maintains records on the identity and last known residence of Names insuring risk in the Lloyd's market.  That information is kept strictly confidential.

In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk.  The Names are jointly and severally obligated to the insured for the percentage of the risk each has agreed to assume. The insured does not have to sue each Name individually however to collect on their individual promises because the typical Lloyd's policy contains a clause providing that "any [Name] can appear as representative of all [Names]."  Id.  Thus, when litigation ensues over a Lloyd's policy, the only named Lloyd's

party appearing in the litigation is usually the lead underwriter on the policy.  Id.  The standard Lloyd's policy states "that in any suit instituted against any one of [the Names] upon this contract, [all the Names] will abide by the final decision of such Court or of any Appellate Court in the event of an appeal."[4] Id.  Thus, each Name is contractually bound on an individual basis to the insured to adhere to any adverse judgment reached in the suit notwithstanding that only one Name participates in the litigation as a named party.  Thus, a Syndicate, being only a grouping of Names, has no contractual relationship with the insured.

In the instant case, Syndicate 190 is a single-Name Syndicate with Liberty as its sole Name and underwriting member. Liberty is the lead underwriter on the Policy and insures 32.79 percent of the risk which is more than the risk insured by any other Name on the Policy.[5]  Liberty is a British corporation with its principal place of business in the United Kingdom.  Thus, if only Liberty's citizenship is relevant for jurisdictional purposes, then the parties are completely diverse because DGH is a citizen of Texas, Delaware, and New York.  If, however, the

_____

[4] The policy at issue in this litigation is not part of the record.  However, Liberty submitted an affidavit in response to DGH's motion to dismiss.  In its affidavit, Liberty asserts that DGH's policy contains the standard Lloyd's language and provisions regarding the Names' willingness to be bound by a judgment against any other Name.

[5] Liberty's potential liability on the Policy is at least $163,950.00.

citizenship of every Name subscribing to the Policy is relevant for jurisdictional purposes, then the district court's dismissal was proper as Liberty has not alleged the citizenship of all Names subscribing to the policy, and at least one Name is believed to be a citizen of Texas.

**D.   Law and Analysis**

Several of our sister circuit courts have addressed the Lloyd's citizenship conundrum and have reached differing results based upon differing reasoning.  In <u>Certain Interested Underwriters at Lloyd's, London v. Layne</u>, 26 F.3d 39 (6th Cir. 1994), Lloyd's had brought a declaratory judgment action seeking to deny coverage under a policy.  Defendants were Tennessee citizens and the plaintiff Lloyd's underwriters were citizens of Great Britain.  Defendants, who sought to vacate an adverse judgment, argued that the plaintiff-underwriters were really agents or representatives of the subscribing Syndicates.  Thus, Defendants argued that the court should have looked to the citizenship of the subscribing Syndicates in order to determine whether the parties were completely diverse.  Analogizing a Lloyd's Syndicate to an unincorporated association, defendants argued that a Lloyd's Syndicate has the citizenship of every Name in the Syndicate.

The Sixth Circuit began its analysis with the "real party to the controversy test."  <u>Id.</u> at 42 (citing <u>Carden</u>, 494 U.S. at 187 n.1; Wright, <u>Federal Practice & Proc.</u> § 1556 (2d ed. 1990)).

Under this test, if one of the "nondiverse" parties is not a real party in interest, and is purely a formal or nominal party, his presence may be ignored when determining jurisdiction.  Id. (citing Salem Trust Co. v. Manuf. Fin. Co., 264 U.S. 182 (1924)). Noting that Federal Rule of Civil Procedure 17(a) requires that every action be prosecuted in the name of the "real party in interest," the court  stated that the "real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief.  Id. at 43 (citing Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984); American Nat'l Bank & Trust Co. v. Weyerhaeuser Co., 692 F.2d 455, 459-60 (7th Cir. 1982); Wright, supra, § 1544 at 340).  The Sixth Circuit, citing Erie Railroad v. Tompkins, 304 U.S. 64 (1938), concluded that Tennessee law should apply to determine whether the plaintiff-underwriters had a substantive right to relief.  Id.

Applying Tennessee law, the Sixth Circuit concluded that the plaintiff-underwriters were liable on the contract because they had functioned as agents for undisclosed principals (the Syndicates).  Because under Tennessee law an agent for an undisclosed principal is personally liable on a contract, the underwriters were found to be real parties in interest.  Id. at 43.  Further, under Tennessee law, once the agent is sued, the principal is no longer liable.  Thus, once the agent (underwriter) became the party sued, the principal (Syndicates)

had no further interest in the case. Id. Given that the Syndicates had no interest in the case after the underwriter was sued, they were not real parties to the controversy and their citizenship could be ignored. Id. Accordingly, the court looked only to the citizenship of the plaintiff-underwriters when determining whether complete diversity existed.

Four years later, the Seventh Circuit decided Indiana Gas Co. v. Home Insurance Co., 141 F.3d 314 (7th Cir. 1998). Indiana Gas sued its insurers for indemnity on environmental cleanup costs. While the case was on appeal, the parties informed the court that at least one subscribing Name on the Lloyd's policy was a citizen of Indiana--the same state of citizenship as the plaintiff Indiana Gas. The Seventh Circuit focused its analysis on the Syndicates as the appropriate entities to either sue or be sued on a Lloyd's policy. Concluding that a Syndicate had all the characteristics of a limited partnership, the court concluded that a Syndicate has the citizenship of every Name belonging to the Syndicate just as a partnership has the citizenship of every partner. Id. at 317. The court noted that this rule applied to partnerships regardless of whether partners were named in the lawsuit. Id. at 317. The Seventh Circuit interpreted Carden v. Arkoma Associates, 494 U.S. 185 (1990), as articulating a general rule that every association other than a corporation must be treated like a partnership for citizenship purposes. Id. Thus, according to the Seventh Circuit, the Syndicates must be treated

as entities and the citizenship of every subscribing Name must be considered when determining a Syndicate's citizenship. Just as a plaintiff cannot ignore non-diverse partners to save jurisdiction, a plaintiff cannot ignore or dismiss non-diverse Names in a Syndicate. Id. at 317.

In reaching its conclusion, the Seventh Circuit rejected every aspect of Layne, concluding that the Sixth Circuit had failed to factor in that liability *vel non* on a contract does not control the citizenship inquiry. Id. at 319. For instance, limited partners cannot be sued and are not liable for a partnership's acts yet their citizenship cannot be ignored. Id. According to Indiana Gas, the underwriting Syndicates must be treated like partnerships when determining citizenship. Id. Thus, pursuant to Carden, the citizenship of every Name on the policy must be considered when determining whether diversity is complete.

Later that same year, the Second Circuit decided E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co., 160 F.3d 925 (2d Cir. 1998) ("Squibb I"). In Squibb I, a coverage dispute against Lloyd's had been pending in the district court for nearly sixteen years and had culminated in a jury verdict favorable to Squibb. When the case finally hit the appellate court, the Second Circuit *sua sponte* questioned whether diversity was complete because the lead underwriter had been sued as a representative of all underwriters who had subscribed to the

policy. Id. at 928. The Second Circuit rejected the Layne court's analysis and agreed with Indiana Gas in so far as the Seventh Circuit had concluded that a lead underwriter sued in a *representative* capacity must reflect the citizenship of every Name subscribing to the policy. Id. at 939-40. After all, "federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists." Squibb I, 160 F.3d at 931 (citing Northern Trust Co. v. Bunge Corp., 899 F.2d 591, 594 (7th Cir. 1990)). Because the underwriter was sued as representative, and because the record failed to reflect the citizenship of all Names, subject matter jurisdiction was questionable.

However, the Second Circuit went beyond Indiana Gas and surmised that the jurisdictional problems surrounding Lloyd's grew only out of the lead underwriter's decision to sue in a representative capacity. In other words, the Squibb I court postulated that where the lead underwriter sues or is sued only in his individual capacity, the existence of jurisdiction depends solely on the lead underwriter's citizenship. Id. at 936. It would not depend on the status of the other Names who, though members of the Syndicates at risk, would not be direct parties to the litigation. Id. The Second Circuit rejected the notion that the non-party Names' citizenship would have to be considered simply because they too would be bound by whatever judgment is rendered against the only Name sued. Id. The Second Circuit

reasoned that a federal court does not lose jurisdiction simply because a non-diverse non-party is contractually bound to indemnify the diverse parties. Id. As long as the party being sued is a real party to the controversy, the fact that the case will determine the rights of non-diverse litigants through collateral estoppel or preclusion does not affect jurisdiction. Id. Because the lead underwriter is severally liable on the policy, he is a real party to the controversy. Id. at 937. Thus, where he appears in the litigation solely on an individual basis, only his citizenship need be considered. Id.

The Squibb I court also found that the Supreme Court's Carden decision was not an impediment. Because Carden applies only to formal entities created under state law, it does not apply in a Lloyd's context where no formal entity is a party to the suit. Id. at 937. The Squibb I court was unconvinced that Syndicates are formal entities because "[t]he contractual provision that obligates a Name to abide by the judgment rendered against any other Name runs vertically between the insured and each Name, not horizontally from Name to Name." Thus, a Lloyds policy taken as a whole is really "a series of independent bilateral contracts from insurer to insured." Id. The Names are bound in contract to the insured and not to each other and a Syndicate bears no liability. See id. Therefore, taken as a whole, a Syndicate does not constitute an entity. Id. Rather than render its decision, the Second Circuit concluded that the

case should be remanded to the district court for a determination in the first instance of whether British law and the policy in dispute would allow a suit to proceed against a Name individually and whether the non-party names could be dismissed as dispensable parties.  Id. at 936-37, 940.

On remand, the district court concluded that British law and the contracts at issue would permit the suit to proceed against a Name in his individual capacity.  E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., No. 82 Civ. 7327JSM, 1999 WL 350857, at *5 (S.D.N.Y. June 2, 1999), aff'd, 241 F.3d 154 (2d Cir. 2001).  The court went on to conclude that the other Names were dispensable parties under Rule 19(b) because all Names were contractually bound by the policies and by the rules of Lloyd's to abide by any judgment rendered against the lead underwriter.  Id. at *13.  Thus, dismissing the *representative* claims against the lead underwriter would have no practical effect on any other Name.  Id.  Because the citizenship of the lone underwriter was diverse from every other opposing party, diversity jurisdiction was met.[6]  The Second Circuit ultimately affirmed.  E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154 (2d Cir. 2001) ("Squibb II").

Between Squibb I and Squibb II, the Third Circuit decided

---

[6] The court also noted that the claim against the individual Name met the amount in controversy requirement.  See Squibb, 1999 WL 350857, at *5.

<u>Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co.</u>, and held that the citizenship of the underwriter sued on the policy is the only citizenship relevant for diversity purposes. 177 F.3d at 223.  The insured had sued "Certain Underwriters at Lloyd's, London subscribing to Insurance Policies [specifically enumerated]."  <u>Id.</u> at 216.  The parties later stipulated to an amended complaint in which one of the individual underwriters "on behalf of himself and all other Underwriters at Lloyd's, London, subscribing to [specifically enumerated policies]" substituted for "Certain Underwriters."  The parties also stipulated that any final judgment for or against the sole party underwriter would be binding on those underwriters subscribing to the enumerated policies.[7]  Prior to the entry of final judgment, the parties brought to the court's attention a decision rendered by another court in the same district in which the district court held that the citizenship of all underwriters on a Lloyd's policy had to be taken into account in determining diversity jurisdiction, <u>Lowsley-Williams v. North River Ins. Co.</u>, 884 F. Supp. 166 (D.N.J. 1995).  No party, however, challenged jurisdiction and the court proceeded to enter final judgment.

On appeal, the Third Circuit, without reference to any other circuit court decision, held that the citizenship of the

---

[7] The Third Circuit did not mention the contractual provision typically contained in a Lloyd's policy in which each Name agrees to abide by a judgment rendered against any other Name.

underwriter sued on the policy was the only citizenship relevant for diversity purposes. 177 F.3d at 223. Although the amended complaint alleged that the underwriter was there individually as well as in a representative capacity, the Third Circuit concluded that the claim was really only one against the named underwriter individually. Id. at 222. The court reasoned that the plaintiff had not brought suit against the underwriter as an agent of the other underwriters or against the Syndicates of which they were members or against the underwriter as agent for his Syndicate. Id. at 222 & n.14. The court also noted that the Names shared no common liability, each being liable only for the share of the risk each had assumed. Id. at 222. Moreover, the district court had not certified a defendant class of underwriters, which according to the Third Circuit, would have been the only way that the underwriter could have truly been sued in a representative capacity. See id. Thus, the claim against the underwriter was one against him individually. And because each Name was liable only for his share of the risk, and because joint and several obligors are not necessary defendants under Rule 19(a), plaintiff was entitled to sue less than all of the Names. Id. at 223 n.16.

Further, the Third Circuit concluded that the parties' stipulation that the judgment against the named underwriter would bind all others did nothing to affect jurisdiction because the stipulation did not place any of those other underwriters before the court. Id. at 223. Moreover, the named underwriter was not

a party sued only to manufacture jurisdiction because the named underwriter was a Name who had subscribed to the policy thereby giving the plaintiff a valid claim against him.  See id. n.16. Because the named underwriter was the only underwriter named in the complaint, only his citizenship was relevant to the exercise of diversity jurisdiction.  Id. at 223.

In the current posture of the instant case, Liberty is suing only in its individual capacity as lead underwriter on the Policy.  Thus, Liberty's case is presented to us in the exact procedural posture suggested by the Second Circuit in Squibb I and ultimately approved by the Second Circuit in Squibb II.  We find the Second Circuit's approach to be based upon sound reasoning.

At the outset, Liberty is without question a real and substantial party to the controversy.  Aetna Cas. & Surety Co. v. Iso-Tex, Inc., 75 F.3d 216, 218 (5th Cir. 1996) (citing Navarro Savings Ass'n, 446 U.S. at 460, 100 S. Ct. at 1781). Liberty is a subscribing Name on the Policy and is therefore directly bound via contract to DGH, the insured.  Liberty's personal stake in the outcome is approximately $163,950.00.  Therefore, this is not the situation where an agent with no personal stake in the controversy attempts to sue on behalf of his non-diverse principal in order to create diversity.  Chemical Leaman, 177 F.3d at 223 n.16; see Navarro Savings, 446 U.S. at 465, 100 S.

Ct. at 1784. Liberty faces actual liability for the risk it assumed and therefore is a real party to the controversy.[8]

Moreover, pretermitting the Lloyd's issue, the district court would have diversity jurisdiction over Liberty's individual claim against DGH. Liberty is a British citizen and DGH is a citizen of Texas, Delaware, and New York. Thus, Liberty and DGH are completely diverse in citizenship. Further, Liberty's potential liability on the Policy is $163,950.00, a sum well in excess of the jurisdictional amount.

Given that Liberty is a real party to the controversy and that the district court would have jurisdiction over Liberty's individual claim, the next logical question is whether a Name on a Lloyd's policy can be sued individually by an insured.[9] In Indiana Gas, the Seventh Circuit answered that question in the negative but we find no legal support for such a conclusion--a conclusion reached without discussion, analysis, or citation to

---

[8] It is unclear from the record whether Corfield, the original plaintiff, was a real party to the controversy. Although Corfield is referred to as the active underwriter for Syndicate 190, Liberty is the sole Name in Syndicate 190. Thus, Corfield might very well have had no personal stake in the litigation.

Given that this matter is before us solely on the diversity jurisdiction issue, this Court expresses no opinion as to whether Liberty's declaratory judgment action presents a justiciable controversy between the parties.

[9] Neither party briefed whether an insured can sue a Name individually. As previously noted, this is a declaratory judgment action brought by Liberty against the insured. Thus although the Court's analysis is often structured in terms of an insured suing on a Lloyd's policy, all principles should apply equally to a declaratory judgment action brought by the insurer against the insured. Neither party has suggested otherwise.

legal authority.  As the district court in <u>Squibb</u> observed, "[i]t would be a strange law indeed that would hold that an individual, who had so clearly bound himself individually by contract, could not be sued individually to enforce that contractual obligation." <u>Squibb</u>, 1999 WL 350857, at *5.  Indeed, the very essence of a Lloyd's policy is that it is a collection of individual contracts running between the insured and each Name.  Moreover, the estoppel provision contained in every Lloyd's policy, <u>i.e.</u>, that each Name will abide by a judgment rendered against any other Name, would not be necessary if litigation were always required to proceed against an underwriter in a representative capacity.

The severability of each Name's liability to the insured lends further support to the conclusion that a Name can be sued individually.  As discussed above, a Lloyd's policy is actually a collection of many bilateral contracts running between the insured and each Name.  The Names contract directly with the insured and each Name contracts independently of any other Name. Because each Name's liability is several, Liberty's obligation to DGH is independent of any other Name's obligation to the insured. Simple logic allows for no other conclusion but that an insured can sue a Name individually.

Having determined that an insured can sue a Name individually, it does not follow that the citizenship of the remaining Names on the Policy who are not parties to the case and are not before the court is relevant to determining whether the

parties are completely diverse. The fact that the Names'
contracts with the insured and the rules of Lloyd's are
structured such that the other Names are affected by the judgment
against a single Name does not bring those other parties before
the court or make them relevant for the citizenship
determination. Squibb I, 160 F.3d at 936-37; Plains Growers,
Inc. v. Ickes-Braun Glasshouses, Inc., 474 F.2d 250, 252 (5th
Cir. 1973) ("The citizenship of one who has an interest in the
lawsuit but who has not been made a party to the lawsuit . . .
cannot be used . . . to defeat diversity jurisdiction."); 
Chemical Leaman, 177 F.3d at 223. The fact that other parties
are bound by a judgment against one obligor or forced to
indemnify an obligor is insufficient to bring their citizenship
into consideration when they are not parties to the suit. Squibb
I, 160 F.3d at 936 (citing Wheeler v. City of Denver, 229 U.S.
342, 33 S. Ct. 842, 57 L. Ed. 1219 (1913)).[10]

We reached a similar result in Aetna Casualty & Surety Co.
v. Iso-Tex, Inc., 75 F.3d 216 (5th Cir. 1996). In Aetna
Casualty, Aetna was one of many members of an unincorporated

---

[10] The "real party to the controversy" test does not require
a federal court to consider the citizenship of non-parties who
have an interest in the litigation or might be affected by the
judgment. The "real party to the controversy" test requires
consideration of the citizenship of non-parties when a party
already before the court is found to be a non-stake holder/agent
suing only on behalf of another. See Navarro Savings, 446 U.S.
458, 100 S. Ct. 1779.; see also Carden, 494 U.S. at 188 n.1, 110
S. Ct. 1018 n.1 (rejecting application of the real party to the
controversy test for determining the citizenship of a limited
partnership).

insurance association that insured the risk st issue.  Aetna brought a declaratory judgment action against the insured "as a member of [the association] . . . for itself and all other members of such association."  Id. at 218.  While Aetna was diverse from the all defendants, other members of the association were not of diverse citizenship.  We held that complete diversity was satisfied because neither the association nor the other members were parties to the suit.  Id.  We found Aetna's status as a representative to be no impediment to jurisdiction because Aetna's position was analogous to that of a class representative under Federal Rule of Civil Procedure 23.2.  Under Rule 23.2 the citizenship of unnamed class members is disregarded.  Id. (citing Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 364-66, 41 S. Ct. 338, 341-42, 65 L. Ed. 673 (1921); Calagaz v. Calhoon, 309 F.2d 248 (5th Cir. 1962)).[11]  Because Aetna was potentially liable for its share of the risk, it was a "real and substantial" party to the controversy.  Because Aetna was diverse from all defendants, the Court had jurisdiction over Aetna's claim without regard to the citizenship of any non-parties.

The Supreme Court's decision in Carden v. Arkoma Associates does not require a contrary result.  In Carden, the Supreme Court held that the citizenship of every partner in a limited partnership must be considered for diversity purposes.  494 U.S.

---

[11] Of course in the instant case, Liberty is suing only on behalf of itself having dropped all allegations that it intends to sue as a representative of the other subscribing Names.

at 195-96, 110 S. Ct. at 1021.  In so holding, the Supreme Court clarified that every artificial entity, other than a corporation, takes its citizenship from all of the members comprising the entity.  Id.  DGH argues that Carden compels the conclusion that every Name in a Syndicate must be considered because a Syndicate is an artificial entity.  Assuming arguendo that a Syndicate is an artificial entity, a conclusion in and of itself open to debate, see Squibb I, 160 F.3d at 929; Chemical Leaman, 177 F.3d at 221, the citizenship of the Syndicates is of no relevance because they play no role in litigation over a Lloyd's policy.  It is well-settled that Syndicates are not liable on Lloyd's policies--only individual Names are liable even though they subscribe to risks via Syndicates.  The insured has no contractual relationship with a Syndicate because Syndicates do not insure risks.  Thus, an insured has no claim against a Syndicate for coverage under a Lloyd's policy.  While Carden might apply if the citizenship of the Syndicates were relevant, it does not apply to make the citizenship of the other non-party Names, who are not members of an entity currently before the court, relevant to diversity jurisdiction.

DGH's reliance on Royal Insurance Co. v. Quinn-L Capital Corp., 3 F.3d 877 (5th Cir 1993), is likewise misplaced.  In Royal we held that the citizenship of an attorney in fact through whom a group of underwriters acts to issue insurance is irrelevant for jurisdictional purposes.  Id. at 882-83.  The

plaintiff was a Lloyd's-type plan organized under Texas law. Under Texas law such plans are unincorporated associations. Because the association itself was a party to the suit, we naturally concluded that the citizenship of each underwriter had to be considered for diversity purposes. Id. at 883. The citizenship of the association's attorney-in-fact was irrelevant because he was not a member of the association. Given that Royal dealt with the citizenship of an association as a party, Royal has no bearing on whether the citizenship of all Names on a Lloyd's of London policy must be considered when an underwriter is sued individually.

In sum, the district court had subject matter jurisdiction over this claim because DGH is alleged to be a citizen of Texas, Delaware, and New York, and Liberty is alleged to be a citizen of the United Kingdom. Liberty's 32.79 percent of risk is approximately $163,950.00, an amount well in excess of the jurisdictional amount. The other subscribing Names are not parties before the Court and their citizenship need not be considered when determining whether the parties are completely diverse. Thus, the district court erred in dismissing the action for lack of subject matter jurisdiction.

REVERSED AND REMANDED.